**Anthony William TREVINO,**
**Petitioner,**

v.

**Michael EVANS,[1] Respondent.**

**No. 94CV1913 IEG (RBB).**

United States District Court,
S.D. California.

Sept. 18, 2007.

---

1. Pursuant to Federal Rule of Civil Procedure 25(d)(1), the Court substitutes Michael Evans, Warden of Salinas Valley State Prison, for K.W. Prunty, former Warden.

Anthony William Trevino, Soledad, CA, pro se.

Rebecca Putnam Jones, Law Offices of Rebecca Putnam Jones, San Diego, CA, for Petitioner.

Attorney General, Office of the Attorney General, San Diego, CA, for Respondent.

**ORDER (1) REJECTING OBJECTIONS, (2) ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, (3) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (4) DENYING MOTION FOR APPOINTMENT OF COUNSEL, and (5) GRANTING CERTIFICATE OF APPEALABILITY**

IRMA E. GONZALEZ, Chief Judge.

Petitioner Anthony William Trevino ("Trevino"), a state prisoner proceeding through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his June 1992 conviction for first degree murder, conspiracy to shoot at an unoccupied vehicle, and shooting at an unoccupied vehicle. On March 6, 2007, Magistrate Judge Ruben B. Brooks filed a Report and Recommendation ("R & R") recommending the Court deny the petition. On March 26, 2007, Petitioner filed objections to the R & R. On July 20, 2007, petitioner filed a renewed motion for appointment of counsel, which Magistrate Judge Brooks previously denied.

Having reviewed all of the relevant pleadings in this case *de novo*, the Court finds Magistrate Judge Brooks's R & R to

be thorough, complete, and an accurate analysis of the legal issues presented in the petition. The Court hereby rejects petitioner's objections to the R & R, adopts the R & R in full, and denies the petition. The Court likewise denies the renewed motion for appointment of counsel.

## BACKGROUND

### A. Factual Background[2]

Petitioner was prosecuted for his role in two shootings in the Greenfield Mobile Home Park ("Greenfield") on December 2, 1991. Petitioner and co-defendant Joseph Kinsey were passengers in a car driven by co-defendant Robert Connelly. A Chevrolet Blazer driven by James Whitney cut off Connelly's car. Connelly followed the Blazer to Greenfield, located it, and exited the park. Connelly, Kinsey, and petitioner then met co-defendant Carlos Gutierrez, Jr. at the San Diego Factory Outlet. Petitioner asked Gutierrez, "what was up with the nine?" and left the Factory Outlet with a gun.

The four co-defendants re-entered Greenfield in Gutierrez's car and located the Blazer. Then, they exited Greenfield and got into Connelly's car, with petitioner occupying the front passenger seat. Connelly drove back into Greenfield and by the Blazer. Petitioner filed several shots at the Blazer. As Connelly turned the street corner, petitioner fired a second series of shots, one of which hit and killed Alfredo Rodriguez. Kinsey testified that

petitioner later stated he shot at Rodriguez because petitioner thought Rodriguez might have seen his face or Connelly's license plate.

On December 16, investigators found a loaded 9 millimeter handgun in petitioner's bedroom. The casings from the crime scene matched this weapon.

### B. Procedural Background

In an information filed February 21, 1992, petitioner was charged with murder, conspiracy to shoot at an unoccupied vehicle, and shooting at an unoccupied vehicle. The information further alleged that petitioner used a firearm and intentionally inflicted great bodily injury by discharging a firearm from a motor vehicle. Attorney Hank Howlett initially represented petitioner and filed motions for discovery, severance, and suppression of evidence. (Lodgment No. 1, at 33.) On April 7, petitioner's family retained attorney Brent Barnes, who was substituted as counsel on April 10. (Lodgment No. 1(a), at 343–45.) When Mr. Barnes was substituted as counsel, the Hon. Frederic L. Link ("assignment judge") set the matter for trial on April 27. (Lodgment No. 3, at 7.)

On April 27, the assignment judge denied Mr. Barnes's motion for a continuance and assigned the trial to the Hon. Richard M. Murphy ("trial judge"). (Lodgment No. 3(b), at 2–3.) That same day, the trial judge estimated the trial would be trailed for two weeks because of a previously scheduled trial.[3] (Lodgment No. 2(a), at

**2.** For reasons discussed *infra* and in the R & R (pp. 1124–25), the pre-AEDPA version of § 2254 applies to the petition. Under the applicable version of § 2254(d), the state court's written findings of fact are entitled to a presumption of correctness. Although petitioner challenges the state court's analysis of his legal claims as an unreasonable determination of the facts, petitioner does not challenge the California Court of Appeal's written findings on the factual background of the case. (Lodgment No. 11, at 2–5.) Therefore, the Court takes its summary of the facts here from the factual background section of the California Court of Appeal's written opinion.

**3.** Relying on the anticipated length of the previously scheduled trial, the trial judge set dates of May 4 for the filing of motion papers

273.) The previously scheduled trial ended with a plea agreement on April 29, and the trial judge trailed petitioner's case to May 1. (*Id.* at 292.) On May 1, the trial judge again trailed the case to May 5 but refused to hear Mr. Barnes's motion for a continuance because the assignment judge previously denied that motion. (*Id.* at 301, 305.) On May 4, the assignment judge trailed the case to May 11 and directed Mr. Barnes to file no further continuance motions. (Lodgment No. 3, at 9.) On May 11, relying on the assignment judge's order that no further continuances would be granted, the trial judge denied Mr. Barnes's motion for an additional continuance. (Lodgment No. 2(c), at 1255.)

Mr. Barnes joined in the motion to sever on the basis of co-defendants' inculpatory statements, which Mr. Howlett previously filed. (*Id.* at 1296.) The trial judge denied all motions to sever. (*Id.* at 1299.)

Prior to trial, Kinsey pled guilty to one count of shooting at an unoccupied vehicle. (Lodgment No. 11, at 14.) At trial, Mr. Barnes joined co-defendants' objections to jury instructions on accomplice testimony. (*See* Lodgment No. 3(c), at 69–70 (during voir dire proceedings on May 12), & No. 2(*l*), at 3759–60 (during trial on May 27).) Therefore, the trial judge did not instruct the jury to view Kinsey's testimony "with care and caution," *see* CALJIC 3.18, or to require corroborating evidence before convicting petitioner on the basis of that testimony, *see* CALJIC 3.11. The trial judge did, however, instruct the jury not to consider why a person who may have been involved in the crime was not a defendant at trial. *See* CALJIC 2.11.5. The trial judge further instructed the jury concerning the general credibility of witnesses. *See* CALJIC 2.20 (enumerating nonexclusive list of factors that "ha[ve] a tendency

and May 7 for the filing of replies. (Lodg-

reasonably to prove or disprove the truthfulness of the testimony of a witness").

The jury convicted petitioner on all three counts and found the special allegations were true. (Lodgment No. 1, at 170–74.) Petitioner received an aggregate sentence of thirty years to life. (Lodgment No. 1(a), at 353.) Petitioner moved for a new trial or modification of verdict, *id.* at 309, and submitted a supplemental memorandum in support of this motion, *id.* at 337–41. This motion was denied. (*Id.* at 423.)

Petitioner appealed his conviction on July 28, 1992, alleging that he was deprived of his right to effective counsel by the trial court's denials of requests for a continuance, counsel's objection to accomplice jury instructions, and counsel's failure to move for severance on the basis of inconsistent defenses. (*Id.* at 455, & Lodgment No. 4, Table of Contents.) Petitioner also filed a petition for writ of habeas of corpus in the California Court of Appeal. (Lodgment No. 5.) The California Court of Appeal jointly considered the appeal and petition, affirming the conviction and denying the petition. (Lodgment No. 11.) The Court of Appeal likewise denied petitioner's petition for rehearing. (Lodgment No. 13.)

Petitioner then filed a petition for review and petition for writ of habeas corpus in the California Supreme Court. (Lodgment Nos. 14 & 15.) The court summarily denied both petitions on February 23, 1994. (Lodgment Nos. 16 & 17.)

On December 21, 1994, petitioner filed a petition for writ of habeas corpus in this Court. (Doc. No. 1.) On June 29, 1995, petitioner moved to withdraw the single unexhausted claim included in that petition. (Doc. No. 4.) Magistrate Judge Roger C. McKee nonetheless issued a report

ment No. 2(a), at 274.)

and recommendation on July 10, 1995, recommending dismissal of the entire petition for the failure to exhaust. (Doc. No. 5.) This Court adopted the report and recommendation on September 8, 1995 and dismissed the petition. (Doc. No. 6.)

On April 18, 1996, petitioner moved again to withdraw the unexhausted claim and requested reconsideration of his petition. (Doc. No. 8.) In an Order issued May 15, 1996, the Court recognized the prior dismissal of the petition and stated that it would disregard documents filed subsequent to that dismissal. (Doc. No. 9.)

Petitioner filed a first amended petition *nunc pro tunc* to January 29, 2004. (Doc. No. 11.) The amended petition raised the three claims petitioner exhausted in state court (*i.e.*, denial of continuance, failure to move for severance based on inconsistent defenses, and objection to accomplice jury instructions). This Court construed the first amended petition as a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b). (Doc. No. 12.) The Court denied Rule 60(b) relief on May 21, 2004. (Doc. No. 21.)

On November 15, 2005, the Ninth Circuit reversed, holding that the Court should have granted petitioner's motion to amend his original petition. *Trevino v. Prunty,* 150 Fed.Appx. 741, 742 (9th Cir. 2005). The panel cited this Court's failure to acknowledge petitioner's first motion to withdraw his unexhausted claim, the "misleading" directive not to file further pleadings after the petition was dismissed, the incompetence of petitioner's first attorney (who let the statute of limitations run), and the procrastination of petitioner's second attorney (who failed to act for an additional two years). *Id.* All these factors

amounted to "extraordinary circumstances" warranting Rule 60(b) relief. *Id.* The panel directed this Court to consider the amended petition on the merits. *Id.*

Respondent answered the first amended petition on August 16, 2006. (Doc. No. 49.) Petitioner filed a traverse on October 10, 2006. (Doc. No. 51.) On March 6, 2007, Magistrate Judge Ruben B. Brooks issued a forty-four page R & R recommending this Court deny the petition with respect to all three of petitioner's claims. (Doc. No. 53.) Petitioner filed objections on March 26, 2007. (Doc. No. 54.) Respondent did not file a reply to the objections.

## LEGAL STANDARD

 The magistrate judge set forth the appropriate standard of review with regard to Trevino's petition. (R & R, at 10–12.) Specifically, the magistrate judge applied the version of § 2254 in effect prior to the enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The provisions of AEDPA do not apply because petitioner's case was pending when AEDPA became effective on April 24, 1996.[4] *Lindh v. Murphy,* 521 U.S. 320, 336–37, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Phillips v. Woodford,* 267 F.3d 966, 973 (9th Cir.2001). Under the pre-AEDPA standard, federal habeas corpus relief is appropriate for a petitioner whose state custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where, as here, the California Supreme Court summarily denied Trevino's petition for review, the Court analyzes the California Court of Appeal's twenty-page opinion as the "last reasoned decision" on the merits of petitioner's case. *Ylst v. Nunne-*

---

**4.** Petitioner's case was "pending" prior to AEDPA's effective date because petitioner filed his original petition on December 21,

1994, and the Ninth Circuit held this Court should have granted petitioner's motion to amend the original petition.

*maker,* 501 U.S. 797, 803–04, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *Medina v. Hornung,* 386 F.3d 872, 877 (9th Cir.2004). Because petitioner has objected to the R & R's recommendations as to all three of petitioner's claims, the Court reviews the R & R *de novo.* 28 U.S.C. § 636(b) (1)(C); *Brown v. Roe,* 279 F.3d 742, 744 (9th Cir. 2002).

## DISCUSSION

### A. Failure to Make Additional Severance Motion

#### 1. *Magistrate Judge's Findings*

■ Petitioner claims he was denied effective assistance of counsel because Mr. Barnes did not move to sever petitioner's trial from that of his co-defendants on the basis of inconsistent defenses. (First Am. Pet., at 8–11.) The magistrate judge identified the two-prong standard for evaluating a claim for ineffective assistance of counsel. First, counsel's performance must "f[a]ll below an objective standard of reasonableness," and, second, the deficient performance must prejudice the defendant to a degree that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord Doe v. Woodford* (9th Cir. Aug.29, 2007). The magistrate judge recognized petitioner carries the burden of overcoming the presumption that counsel was competent. *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *Dows v. Wood,* 211 F.3d 480, 485 (9th Cir.2000); *Newsome v. Ryan,* No. 05CV1534IEG(RBB), 2007 WL 433282, at *32 (S.D.Cal. Jan.24, 2007).

The magistrate judge found that Mr. Barnes's performance satisfied an objective standard of reasonableness because he joined in Mr. Howlett's previous motion to sever, which was based on co-defendants' statements that inculpated petitioner. (Lodgment No. 1, at 37.) The trial court denied this motion and a similar motion filed by co-defendant Gutierrez, instead redacting the statements. The magistrate judge reasoned there was "no reason to believe" the trial judge would have granted a motion to sever based on inconsistent defenses. (R & R, at 1135.) On the merits, the magistrate judge found petitioner's defense was not "truly irreconcilable" with the co-defendants' defenses because petitioner conceded he fired the bullet that killed Rodriguez. (*See id.,* at 1135 (citing cases).) The other co-defendants merely attempted to minimize their culpability by depicting Trevino's shooting of Rodriguez as a premeditated killing, rather than manslaughter. "Counsel's failure to make a futile motion does not constitute ineffective assistance of counsel." *James v. Borg,* 24 F.3d 20, 27 (9th Cir.1994); *accord Kimmelman v. Morrison,* 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (where petitioner alleges counsel did not litigate a claim competently, petitioner must show the claim is meritorious).

The magistrate judge further found that the failure to move for a severance based on inconsistent defenses did not result in prejudice to petitioner. Reiterating that the trial judge denied the other severance motions and the defenses were not "truly irreconcilable," the magistrate judge found the trial court likely would have denied any such motion. Furthermore, even if petitioner's trial was severed, the jury would have heard the same evidence against petitioner.

#### 2. *Petitioner's Objections*

Petitioner objects that Mr. Barnes's joinder in the prior motions to sever was insufficient because he failed to file a sepa-

rate motion explaining how a joint trial would particularly prejudice petitioner. Rather than making strategic choices of how to represent petitioner, Mr. Barnes allegedly failed to investigate the case adequately and instead followed the lead of co-defendants' counsel. Examples of inadequate investigation include the failure to meet with petitioner until May 9, and the lack of research on motions *in limine* or jury instructions. Petitioner further objects the failure to seek a severance on the basis of inconsistent defenses was, in fact, prejudicial because the co-defendants' incriminating statements would have been inadmissible at the severed trial. Petitioner also disputes the correct legal standard for establishing ineffective assistance of counsel based on a failure to file a pretrial motion. *See Kimmelman,* 477 U.S. at 375, 106 S.Ct. 2574 (where defendant alleged that counsel was ineffective because of failure to file a timely motion to suppress, Supreme Court required defendant to prove the suppression claim was "meritorious" and the existence of a "reasonable probability that the verdict would have been different" if the motion had been granted).

### 3. Analysis

Petitioner's objections emphasize the declaration Mr. Barnes submitted with petitioner's state petition, in which Mr. Barnes claimed that he did not recognize the inconsistent defenses until much of the evidence had been presented at trial. The record contradicts this assertion. On April 10, when Mr. Barnes first appeared before the assignment judge and before he was substituted into the case, he described the case as follows: "Four young men are probably going to be at each other's throats during the trial and [counsel] would like to know the extent of it[.]"[5]

(Lodgment No. 3, at 6.) This exchange indicates that, even before Mr. Barnes represented petitioner, he was aware of the likelihood of some conflict in the various defenses each co-defendant would offer at trial. Although Mr. Barnes wishes in retrospect that he had moved to sever based on inconsistent defenses (Lodgment No. 5, Barnes Decla., at 5), the reviewing court is required " 'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.' " *Bell v. Cone,* 535 U.S. 685, 698, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052); *accord Edwards v. Lamarque,* 475 F.3d 1121, 1127 (9th Cir.2007) (court cannot apply "fabled twenty-twenty vision of hindsight" (internal quotation omitted)). At the time of pretrial motions, the trial judge denied a motion to sever based on inculpatory statements and instead consulted extensively with counsel in redacting the statements. (*See, e.g.,* Lodgment No. 2(e).) Based on the trial judge's extensive effort to redact the statements rather than grant the severance, Mr. Barnes's failure to file an additional severance motion was a reasonable tactical decision. The motion to sever was "futile" in the sense that petitioner cannot establish a "reasonable probability" the trial court, having denied the other motions to sever, would have granted this hypothetical motion. *See James,* 24 F.3d at 27.

■ More importantly, petitioner does not carry his burden of showing that he was prejudiced by counsel's failure to file the motion to sever. *I.e.,* even according to the legal standard petitioner relies upon, petitioner has not shown "a reasonable probability that the verdict would

---

**5.** In context, Mr. Barnes was trying to obtain the contents of Kinsey's plea agreement.

have been different" if the trial judge granted the hypothetical severance motion. *Kimmelman*, 477 U.S. at 375, 106 S.Ct. 2574. Petitioner makes conclusory allegations that the statements of his co-defendants would have been inadmissible at a separate trial. (Objections, at 12.) Petitioner claims a confrontation clause violation under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (Traverse, at 21; Objections, at 12), but, as the magistrate judge pointed out, the Supreme Court has held that *Crawford* is not retroactive. *Whorton v. Bockting*, —— U.S. ——, 127 S.Ct. 1173, 1177, 167 L.Ed.2d 1 (2007). Therefore, petitioner's argument is unsupported by any citation to valid legal authority. Even if petitioner received a separate trial, the jury would have heard the same evidence relied on to convict petitioner in the joint trial. Petitioner cannot establish a "reasonable probability" the outcome of the separate trial would have been different. For these reasons, the Court finds Mr. Barnes did not render ineffective assistance by failing to move to sever on the basis of inconsistent defenses.

**B. Objection to Accomplice Jury Instructions**

*1. Magistrate Judge's Findings*

■ Petitioner claims he was denied effective assistance of counsel because Mr. Barnes joined in codefendants' objections to giving the jury accomplice instructions. (First Am. Pet., at 11–12.) Petitioner argues the jury would have reached a different verdict on premeditation if the jury had received the accomplice instructions and known the terms of Kinsey's favorable plea agreement. Specifically, the jury would have discounted Kinsey's testimony that petitioner shot Rodriguez because Rodriguez may have seen petitioner's face or the vehicle's license plate.

Again applying the legal standard for ineffective assistance of counsel claims, the magistrate judge found Mr. Barnes's performance was objectively reasonable. If the jury had received the accomplice instruction, the state could have introduced Kinsey's plea agreement into evidence. That agreement stated Kinsey's obligation "at all times [to] tell the truth and nothing other than the truth, while testifying on the witness stand." (Lodgment No. 11, at 14.) Objecting to the jury instructions gave petitioner a tactical advantage: it kept from the jury the language in the plea agreement that would enhance Kinsey's credibility as a witness. Mr. Barnes instead attacked Kinsey's credibility by discussing inconsistencies in Kinsey's testimony during closing argument. "A disagreement with counsel's tactical decisions does not provide the basis for declaring that the representation was constitutionally deficient." *Raley v. Ylst*, 470 F.3d 792, 799 (9th Cir.2006). The magistrate judge rejected Mr. Barnes's claim that he made a "completely uninformed" decision to join in co-defendants' objections to accomplice instructions because the trial court discussed the instructions with counsel on separate occasions more than two weeks apart and heard extensive argument on why counsel did not want the accomplice instructions.

The magistrate judge distinguished the tactical decision here from the facts of a case cited by petitioner, in which the Ninth Circuit held that counsel was constitutionally ineffective because counsel's requested jury instructions on accomplice testimony "were the result of a misunderstanding of the law." *Lankford v. Arave*, 468 F.3d 578, 584 (9th Cir.2006) (internal quotation omitted). The jury instructions in *Lankford* gave the defendant "no reasonable tactical advantage" because they enabled the jury to give the accomplice's testimony

more weight than permitted by state law. *Id.*

In determining whether the failure to request accomplice instructions prejudiced petitioner, the magistrate judge considered the appropriate legal factors, including corroborative evidence, general jury instructions on witness credibility, and defense counsel's attack on the accomplice's credibility during closing argument. *United States v. Bosch*, 914 F.2d 1239, 1247–48 (9th Cir.1990); *Bonin v. Vasquez*, 794 F.Supp. 957, 970 (C.D.Cal.1992). The magistrate judge discussed the wealth of corroborative evidence to bolster Kinsey's testimony. (*See* R & R, at 1139 (discussing how petitioner asked Gutierrez before the shooting, "what was up with the nine"; the match between the crime scene casings and the nine-millimeter handgun in petitioner's bedroom; and testimony that petitioner's hand was shaking when he shot Rodriguez).) The magistrate judge further rejected the argument that the trial court exacerbated the prejudice by giving CALJIC 2.11.5, which prohibits a jury from speculating why a person who may have been involved in the crime is not a defendant at trial. Instead, the magistrate judge endorsed the California Court of Appeal's reasoning that CALJIC 2.11.5 is normally superfluous when an unjoined perpetrator testifies at trial because counsel will ask the perpetrator about his status. Here, by contrast, the instruction was appropriate because counsel deliberately kept evidence of Kinsey's plea bargain from the jury, and the jury thus remained unaware of Kinsey's status. Also, the magistrate judge rejected petitioner's claim that CALJIC 2.11.5 compromised the jury's ability to assess Kinsey's credibility because the jury also received CALJIC 2.20, the general instruction on witness credibility. Finally, Mr. Barnes attacked Kinsey's credibility in closing argument. Having considered all three factors, the magistrate judge concluded the failure to give accomplice instructions did not prejudice petitioner.

### 2. Petitioner's Objections

Petitioner claims that Mr. Barnes's joinder in objections to accomplice jury instructions was not a reasonable tactical decision, but instead the consequence of Mr. Barnes's failure to do any research on jury instructions. Petitioner claims the magistrate judge erroneously cited a Tenth Circuit case for the proposition that counsel's tactical decisions are "presumed correct, unless they were completely unreasonable[.]" (*See* R & R, at 1138–39 (quoting *Moore v. Marr*, 254 F.3d 1235, 1239 (10th Cir.2001).)) The Tenth Circuit applies this highly deferential standard only in cases where counsel's strategic decision was "adequately informed," *Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002), and petitioner argues such a standard does not apply to counsel's uninformed decision to oppose the accomplice instructions. Petitioner further argues the opposition to accomplice instructions was prejudicial because no other evidence corroborated Kinsey's testimony that the shooting was premeditated. If jurors had been instructed about the requirement of corroborating evidence for accomplice testimony, they allegedly would have convicted petitioner of something less than first-degree murder. Similarly, petitioner claims the jurors would have assigned less weight to Kinsey's testimony if they had known he was an accomplice who pled guilty to a lesser offense to avoid liability for first-degree murder.

### 3. Analysis

██ The Court rejects petitioner's objections and adopts the R & R with respect to this claim for habeas relief. Mr. Barnes's actions fall within the range of

effective assistance of counsel even without applying the Tenth Circuit's "completely unreasonable" standard. Under *Strickland,* in considering any claim for ineffective assistance of counsel, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" 466 U.S. at 689, 104 S.Ct. 2052. Furthermore, as the magistrate judge noted, counsel's assistance is not ineffective merely because the Court disagrees with counsel's trial tactics. *Raley,* 470 F.3d at 799. Mr. Barnes's conduct represents a reasonable tactical decision. By joining in co-counsel's objections to accomplice instructions, Mr. Barnes prevented the jury from learning of Kinsey's promise in his plea agreement to tell the truth on the witness stand. Those statements in the plea agreement would have enhanced Kinsey's credibility as a witness. While the plea agreement was not entered into evidence, Mr. Barnes attacked Kinsey's credibility in closing argument. Of course, Mr. Barnes could have chosen differently, by insisting on giving the accomplice instructions to the jury and challenging Kinsey's credibility as an accomplice who capitulated to the police to avoid risking a conviction for first-degree murder. However, this Court does not second-guess counsel's tactical choice concerning the best method for challenging Kinsey's credibility.

Furthermore, the Court rejects petitioner's argument that Mr. Barnes's objection to the accomplice instructions was uninformed. Although the issue of accomplice instructions was first raised before the trial began, the trial judge raised the issue again on May 27, toward the end of the trial. The trial judge specifically asked Mr. Barnes if he still objected to accomplice instructions. While Mr. Barnes claimed he "would have virtually insisted" on the accomplice instructions in a hypothetical, separate trial, he adhered to his position that he was "objecting for tactical reasons to the accomplice instructions." (Lodgment No. 2(*l* ), at 3759–60.)

Finally, the Court finds the failure to give the accomplice instructions did not prejudice petitioner on the issue of premeditation. A closer reading of the instructions at issue indicates the limited nature of the requirement of corroborative evidence to support an accomplice's testimony. Specifically, CALJIC 3.12 requires other evidence which "tends to connect the defendant with the commission of the crime charged." On the other hand, "it is not necessary that the evidence of corroboration be sufficient in itself to establish every element of the crime charged, or that it corroborate every fact to which the accomplice testifies." *Id.* The accomplice's testimony is uncorroborated "[i]f there is no independent evidence which tends to connect defendant with the commission of the crime." *Id.* The corroborative evidence cited in the R & R is sufficient to "tend[ ] to connect [petitioner] with the commission of the crime." Furthermore, that corroborative evidence need not "establish every element of the crime charged," including premeditation. Mr. Barnes did not render ineffective assistance of counsel by objecting to accomplice instructions.

## C. Denials of Motions for Continuance

Petitioner claims he was denied effective assistance of counsel because Mr. Barnes did not have adequate time to prepare for trial. (First Am. Pet., at 4–8.) The magistrate judge construed petitioner's claim as a two-pronged challenge: (1) the state court's denials of Mr. Barnes's various motions for a continuance were such an abuse of discretion as to violate due process, and (2) without those continuances, counsel rendered ineffective assistance at trial. *See Castillo v. Matesanz,* 348 F.3d 1, 9–11 (1st

Cir.2003) (separately addressing habeas petitioner's due process challenge to denial of a continuance and claim for ineffective assistance of counsel); *United States v. Stewart*, 256 F.3d 231, 244 (4th Cir.2001) (where defendant alleged district court violated his Sixth Amendment right to effective assistance of counsel by denying motion for continuance, defendant must first show denial of continuance was an abuse of discretion and then show specific prejudice from denial).

### 1. Due Process

#### a. Magistrate Judge's Findings

■ The magistrate judge acknowledged the trial judge's "broad discretion" in whether to grant continuances and recognized "only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11–12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964)); *accord United States v. Garrett*, 179 F.3d 1143, 1145 (9th Cir.1999). Relevant factors in evaluating the denial of a continuance include the granting of previous continuances; the inconvenience to parties, counsel, or the court; reasons for the delay; prejudice to the defendant if the continuance is denied; and the defendant's fault for the delay. *Williams v. Stewart*, 441 F.3d 1030, 1056 (9th Cir.2006). Because the due process inquiry into the denial of a continuance focuses on "the reasons presented to the trial judge at the time the request is denied," *Ungar*, 376 U.S. at 589, 84 S.Ct. 841, the magistrate judge refused to consider the evidence Mr. Barnes would have presented at trial (as summarized in petitioner's post-trial motion and state habeas petition), if the state

court had granted a continuance. (R & R, at 1127.)

■ The magistrate judge serially considered each of Mr. Barnes's requests for a continuance. With respect to Mr. Barnes's request for a 30–day continuance when he first appeared before the assignment judge on April 10, the magistrate judge noted Mr. Barnes's representations to the court that he had analyzed the case for approximately three weeks and was familiar with the issues. The assignment judge allowed Mr. Barnes to substitute into the case on the condition that he would be ready to begin trial on April 27. However, because trial did not actually begin until May 11, Mr. Barnes received the equivalent of the thirty-day continuance he requested.

By motion filed April 22 and argued April 27, Mr. Barnes requested a continuance because defense experts and investigators needed more time and discovery materials were still incoming. The magistrate judge observed that, although the motion was denied, the assignment judge assigned the case to a trial department in which trial would not begin for about a week and a half. Thus, Mr. Barnes had more time to complete the necessary tasks.

On May 4, the assignment judge granted Mr. Barnes's motion for a one-week continuance to trail the case to May 11. The assignment judge granted this motion even though the trial judge would have been available to begin trial on May 5. When Mr. Barnes again moved for a continuance on the eve of trial, the trial judge denied that motion.

Based on his analysis of the record, the magistrate judge found the state court "accommodated [petitioner's] request for additional time, balanced the conflicting demands on the prosecution and codefendants, and considered the stated reasons for continuances." (R & R, at 1128.) The

magistrate judge concluded the state court sufficiently weighed all relevant factors so that the denials of a continuance were not abuses of discretion.

### b. Petitioner's Objections

Petitioner objects to the magistrate judge's refusal to consider the evidence Mr. Barnes presented in his motion for new trial and state habeas petition. In *Ungar*, the Supreme Court said of analyzing whether the denial of a continuance violates due process: "The answer must be found in the circumstances present in every case, *particularly* in the reasons presented to the trial judge at the time the request is denied." 376 U.S. at 589, 84 S.Ct. 841 (emphasis added). Therefore, the reasons Mr. Barnes presented to the trial judge are the primary factors for consideration, but they are not exclusive. *Cf. Skillern v. Estelle*, 720 F.2d 839, 850–51 (5th Cir.1983) (considering reasons offered to state trial judge in motion for new trial and holding that continuance did not violate due process). Petitioner argues the magistrate judge's limited review of evidence was "counterintuitive" because, if denial of the continuance prevents counsel from presenting certain evidence to the jury, post-trial motions and declarations are necessary to show what evidence was not presented. (Objections, at 3.)

Petitioner further objects that the California Court of Appeal and magistrate judge did not mention certain aspects of the factual record. These aspects include the time Mr. Barnes had to devote to restoring the expert funding that the assignment judge improperly revoked, the single private consultation between Mr. Barnes and petitioner that took place on May 9, and the limited amount of time Mr. Barnes spent in reviewing the case before being substituted as counsel. Additionally, petitioner emphasizes that previous coun-

sel did less work on the case than he represented to Mr. Barnes and that Mr. Barnes did not obtain information about Kinsey's plea agreement until shortly before trial. Finally, petitioner directs the Court's attention to Barnes's multiple representations to the Court that he was not adequately prepared to try the case, along with the assignment judge's statement to Mr. Barnes on April 27, "I don't care if you're ready or not."

Petitioner claims the relevant factors all pointed in favor of granting the continuance. Petitioner argues that other counsel did not oppose Mr. Barnes's motions for a continuance, Mr. Barnes was not "dilatory or obstructionist," petitioner did not contribute to the situation giving rise to the continuance motion, and the trial began about five months after petitioner was arrested. Petitioner claims the state court granted continuances only to accommodate other counsel's trial schedules, without considering Mr. Barnes's need for additional preparation time.

### c. Analysis

The Court agrees with petitioner that *Ungar* does not preclude consideration of evidence Mr. Barnes submitted with the motion for new trial and state habeas petition. Even considering that evidence, however, the Court finds the state court did not abuse its discretion in denying Mr. Barnes's various motions for a continuance. The state court properly exercised its discretion as it attempted to balance the schedules of counsel for the state and multiple co-defendants. This was not an easy task: counsel had other trials ongoing, as well as various hearings in courts outside of San Diego County. Furthermore, the record contradicts petitioner's assertion that the state acquiesced from the beginning in Mr. Barnes's requests for a continuance. When Mr. Barnes substi-

tuted into the case on April 10, counsel for the state opposed any continuance past April 27. (Lodgment No. 3, at 3.) Finally, the Court emphasizes the assignment judge allowed Mr. Barnes into the case on the condition that Mr. Barnes would be ready to try the case by April 27. (*Id.*, at 6–7.) Mr. Barnes accepted this condition. (*Id.* at 7.)

Several nominal "denials" were *de facto* grants of additional time for Mr. Barnes to prepare for trial. Mr. Barnes ended up receiving the additional thirty days he requested when he first substituted into the case on April 10. Additionally, the assignment judge denied the request on April 27 but assigned the case to a trial department so that Mr. Barnes had additional time to prepare. The assignment judge's granting the May 4 continuance is highly probative evidence that the state court did not have "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay[.]'" *See Morris,* 461 U.S. at 11–12, 103 S.Ct. 1610 (quoting *Ungar,* 376 U.S. at 589, 84 S.Ct. 841). The assignment judge gave Mr. Barnes the additional week the trial judge had originally promised, rather than compel Mr. Barnes to begin trial the next day when the trial judge unexpectedly became available. In light of these prior continuances and *de facto* extensions of time, the state court's final denial of a continuance on the eve of trial was not an abuse of discretion.

### 2. Ineffective Assistance of Counsel

#### a. Magistrate Judge's Findings

Again applying the standard for ineffective assistance of counsel claims, the magistrate judge found Mr. Barnes's performance was objectively reasonable. *See Chambers v. Maroney,* 399 U.S. 42, 59, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) (Harlan, J., concurring and dissenting) ("Where counsel has no acquaintance with the facts of the case and no opportunity to plan a defense, the result is that the defendant is effectively denied his constitutional right to assistance of counsel.") The magistrate judge considered the time Mr. Barnes spent on the case before substituting in as counsel, his agreement with the assignment judge's demand that he would be ready for trial on April 27, the additional two weeks he actually had after that date, and his representation that he worked exclusively on the case after substituting in. (R & R, at 1130.)

In analyzing the issue of prejudice, the magistrate judge declined to apply a presumption of prejudice because of Mr. Barnes's limited preparation time. *See, e.g., United States v. Cronic,* 466 U.S. 648, 665, 104 S.Ct. 2039, 80 L.Ed.2d 657 (twenty-five days held insufficiently short to "even arguably justif[y] a presumption of ineffective assistance of counsel"). To determine prejudice, the magistrate judge "compare[d] the evidence that actually was presented to the jury with that which could have been presented had counsel acted appropriately." *Daniels v. Woodford,* 428 F.3d 1181, 1201 (9th Cir.2005). Although Mr. Barnes claimed he needed more time to gather demonstrative evidence that Greenfield was too dark on the night of the shooting for petitioner to have seen the victim, the magistrate judge found that Mr. Barnes adequately communicated his theory to the jury through the testimony of a private investigator, cross-examination of Kinsey, and statements in closing argument. (R & R, at 1131.)

The magistrate judge considered the particular difficulty of establishing prejudice "'[i]n cases with overwhelming evidence of guilt[.]'" *Bonin v. Calderon,* 59 F.3d 815, 836 (9th Cir.1995) (quoting *United States v. Coleman,* 707 F.2d 374, 378 (9th Cir.1983)). Applied to these facts, the magistrate judge found overwhelming evi-

dence of guilt because all the co-perpetrators said they saw the victim prior to the shooting. These eyewitness statements were sufficient for the jury to find premeditation (and petitioner conceded that he was the shooter). The magistrate judge concluded petitioner could not show "a reasonable probability ... the result of the proceeding would have been different," where a "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

#### b. Petitioner's Objections

Petitioner objects to the magistrate judge's purportedly inadequate discussion of his counsel's ineffective performance. The magistrate judge failed to mention Mr. Barnes's specific representations to the Court that he did not have enough time to do legal research, meet with petitioner, and, above all, develop a coherent theory of defense. Petitioner specifically contests the magistrate judge's limited analysis of why Mr. Barnes needed additional time to investigate the case. More than merely obtaining more evidence of the lighting at the crime scene, petitioner claims Mr. Barnes needed additional time to understand the case. With more time, Mr. Barnes would have realized, *inter alia,* the necessity of moving for a severance and requesting accomplice jury instructions. *See Hart v. Gomez,* 174 F.3d 1067, 1070 (9th Cir.1999) (defining deficient performance as the failure to adequately investigate and introduce evidence that demonstrates factual innocence).

Turning to the prejudice prong, petitioner claims the magistrate judge applied the incorrect legal standard. Comparing the evidence presented to the jury with the evidence that effective counsel would have presented is "far too narrow," petitioner claims, because Mr. Barnes had "an

essential misunderstanding of the case," in addition to inadequate time to present evidence. (Objections, at 9.) Petitioner further claims the magistrate judge inappropriately required petitioner to show that more time would have enabled Mr. Barnes to obtain a different verdict for his client. "[A] reasonable probability does not mean that [the reviewing court] must determine that the jury more likely than not would have returned a verdict for something beside first degree murder, but only that [petitioner] has shown 'a probability sufficient to undermine confidence in the outcome.'" *Jennings v. Woodford,* 290 F.3d 1006, 1016 (9th Cir.2002) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052).

Petitioner claims the magistrate judge's finding of "overwhelming evidence of guilt" misses the point. (Objections, at 9 (citing R & R, at 1131–32).) Instead, the relevant issue is the evidence of premeditation because petitioner claims, if Mr. Barnes had more preparation time, there would have been a "reasonable probability" that the jury would have convicted petitioner of some lesser offense than first-degree murder.

#### c. Analysis

■ Petitioner alleges three specific ways in which the inadequate time for preparation rendered Mr. Barnes's assistance ineffective. (Petition § A ¶ 24.) As discussed *supra,* the first two allegations— the failure to move for a severance and the objections to accomplice jury instructions—fail as a matter of law. The third allegation is that, with more time, Mr. Barnes could have presented demonstrative evidence that, on the night of the shooting, Greenfield was too dark for petitioner to have seen Rodriguez. According to petitioner's motion for new trial, the evenings during April and May (*i.e.,* the time when Mr. Barnes was preparing for

trial) were too cloudy to obtain a measure of the light levels in the clear skies on the evening of the shooting. (Lodgment No. 1(a), at 350.) The Court rejects the argument that counsel's assistance was ineffective because weather conditions during the trial preparation period did not mimic the night of the offense. Instead, the Court agrees with the analysis in the R & R: Mr. Barnes found adequate alternative ways to argue to the jury that petitioner could not see Rodriguez prior to shooting him. Counsel did not fall below an objectively reasonable standard of performance by failing to present demonstrative evidence of the light levels at Greenfield on the night of the shooting. Furthermore, in light of the ample evidence counsel did introduce at trial, the absence of demonstrative evidence did not prejudice petitioner.

 Counsel had thirty days after substituting into the case to prepare for trial. In these circumstances, *Cronic* precludes the Court from applying a presumption of prejudice. 466 U.S. at 665, 104 S.Ct. 2039. In the absence of presumed prejudice, the petitioner must show " 'how *specific errors* of counsel undermined the reliability of the finding of guilt.' " *Young v. Runnels*, 435 F.3d 1038, 1043 (9th Cir.2006) (quoting *Cronic*, 466 U.S. at 659 n. 26, 104 S.Ct. 2039) (emphasis added). Other than the three allegations presented and rejected *supra*, petitioner points to no other "specific errors." Instead, petitioner relies on an amorphous theory that, because counsel was not prepared for trial, petitioner was convicted of first-degree murder rather than some lesser offense. This general argument does not satisfy the legal stan-dard for establishing ineffective assistance of counsel.

**D. Certificate of Appealability**

A petitioner complaining of detention arising from state court proceedings must obtain a certificate of appealability to file an appeal of the final order in a federal habeas proceeding. 28 U.S.C. § 2253(c)(1)(A) (2007).[6] The district court may issue a certificate of appealability if the petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To make a "substantial showing," the petitioner must "demonstrat[e] that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable[.]' " *Beaty v. Stewart*, 303 F.3d 975, 984 (9th Cir.2002) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)). Based on the pleadings, the Court finds petitioner has made a "substantial showing" and grants a certificate of appealability with respect to all three of petitioner's claims. *See id.* at 983–84 (holding that "petitioner must make a substantial showing ... as to *each issue* he wishes to appeal").

**CONCLUSION**

For the reasons stated herein, the Court **REJECTS** petitioner's objections and **ADOPTS** the magistrate judge's thorough and well-reasoned report and recommendation. The Court **DENIES** the petition for writ of habeas corpus. Having denied the petition, the Court also **DENIES** the renewed motion for appointment of counsel. The Court *sua sponte* **GRANTS** a

6. Prior to AEDPA's effective date, a state prisoner could appeal a final order in a habeas proceeding to the court of appeals only with "a certificate of probable cause." 28 U.S.C. § 2253 (1996). Nonetheless, "post-AEDPA law governs the right to appeal" where the appeal is initiated post-AEDPA. *Slack v. McDaniel*, 529 U.S. 473, 481, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000); *accord Mayfield v. Woodford*, 270 F.3d 915, 921 (9th Cir.2001).

certificate of appealability as to all claims raised in the petition.

**IT IS SO ORDERED.**

**REPORT AND RECOMMENDATION RE: DENYING FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

**[DOC. NO. 11]**

RUBEN B. BROOKS, United States Magistrate Judge.

Anthony William Trevino filed his Petition for a Writ of Habeas Corpus on December 21, 1994 [doc. no. 1]. The Petition was dismissed on September 8, 1995 [doc. no. 6, 7]. In an unpublished decision filed on November 15, 2005, the Ninth Circuit reversed the district court and ordered that the First Amended Petition be considered on its merits [doc. no. 41].

Trevino, a state prisoner represented by counsel, submitted a First Amended Petition for Writ of Habeas Corpus [doc. no. 11] which was filed *nunc pro tunc* to January 29, 2004. Petitioner asserts three claims for relief: (1) The trial court's denial of Trevino's motion for a continuance prevented him from receiving effective assistance of counsel; (2) his attorney's failure to seek severance of Petitioner's trial from his codefendants denied him effective assistance of counsel; and (3) he received ineffective assistance when his attorney objected to giving accomplice jury instructions. (Am.Pet. 4–12.)

**I. FACTUAL BACKGROUND**

On December 2, 1991, Robert Connelly was driving south on Interstate 5 in San Diego with Joseph Kinsey and Petitioner as passengers. (Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2598–600, May 19, 1992; Lodgment No. 2(h), Rep.'s Tr. vol. 10, 2780, May 20, 1992.) A red Chevrolet Blazer, driven by James Whitney, suddenly cut in front of Connelly's car, causing Connelly to swerve and pull off the road. (Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2500–01, 2600–01.) Connelly, Trevino, and Kinsey followed the Blazer when it exited the freeway. (*Id.* at 2503, 2603.) They lost sight of the vehicle at one point, but they caught up and followed it to the entrance of Greenfield Mobile Home Park, where Whitney lived. (*Id.* at 2501, 2603–04.) Kinsey testified that they followed Whitney's Blazer "to mess with him, I guess, beat him up, or something." (*Id.* at 2602–05; Lodgment No. 2(h), Rep.'s Tr. vol. 10, 2780–81.)

The group waited outside the trailer park for a few minutes, then drove inside. (Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2604.) They found the Blazer parked with no one nearby, so they left. (*Id.* at 2604–05.) They drove to San Ysidro, which was approximately five minutes away, to see their friend Carlos Gutierrez at work. (*Id.* at 2605, 2612; Lodgment No. 2(h), Rep.'s Tr. vol. 10, 2781.)

When they arrived, Gutierrez was in the parking lot talking to Carlos Mallard, a security guard. (Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2523–26, 2612.) Trevino and Connelly got out of the car to speak with Gutierrez. (*Id.* at 2612–13.) Kinsey did not join the conversation and did not hear what was said. (Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2613–14; Lodgment No. 2(h), Rep.'s Tr. vol. 10, 2782.) While in the parking lot, Petitioner asked Gutierrez "what was up with the nine." (Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2529.) Mallard walked away because he thought the men were talking about a nine-millimeter handgun and did not want to be involved. (*Id.* at 2529–30.) He knew that Gutierrez owned a nine-millimeter handgun. (*Id.* at 2530–31.) Kinsey, who never joined the other men in the parking lot, saw Trevino

holding a gun. (*Id.* at 2614–15.) After ten to fifteen minutes, Kinsey and Connelly left the parking lot in Connelly's car, and Trevino left as a passenger in Gutierrez's car. (*Id.* at 2616; Lodgment No. 2(h), Rep.'s Tr. vol. 10, 2784.)

The two cars drove to Greenfield Mobile Home Park and stopped just outside the entrance gate. (Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2617.) All four men got in Gutierrez's car and drove into the mobile home park together. (*Id.*) Once they located the red Chevrolet Blazer, the group left the mobile home park to switch cars, because Gutierrez "didn't want no trouble in his car." (*Id.* at 2618.) The four men got in Connelly's car; Connelly was driving; Trevino was in the front passenger seat; and Gutierrez and Kinsey were in the back seats. (*Id.* at 2619.) While they drove back into the mobile home park, Trevino stated that he would shoot the Blazer if no one was around. (Lodgment No. 2(h), Rep.'s Tr. vol. 10, 2829, 2836.)

As they approached the red Blazer, Connelly turned the car's headlights off. (Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2619–20.) Trevino took out the handgun and cocked it, but the others told him not to shoot. (Lodgment No. 2(h), Rep.'s Tr. vol. 10, 2789–91, 2832, 2835.) Trevino then shot at the Blazer several times. (*Id.* at 2791; Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2620.) They accelerated past the Blazer and turned left down the street. (Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2622; Lodgment No. 2(h), Rep.'s Tr. vol. 10, 2791.)

Four or five seconds later, Trevino fired two more shots as they drove past another truck. (Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2623, 2627; Lodgment No. 2(h), Rep.'s Tr. vol. 10, 2792.) Alfredo Rodriquez, who was standing beside the driver's door of the truck, was shot and killed. (*See* Lodgment No. 2(f), Rep.'s Tr. vol. 8, 2287–92, May 18, 1992; Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2542–43.)

After driving out of the mobile home park, Connelly, Kinsey, Gutierrez, and Petitioner all went to Connelly's apartment. (Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2628–29.) Kinsey testified that while there, someone asked Trevino why he shot at the person by the truck, and he stated he thought the person might have "seen his face or the license plate." (*Id.* at 2630; Lodgment No. 2(h), Rep.'s Tr. vol. 10, 2816–18.) Angela Knecht, who was present in the apartment, overheard Trevino say "his hand was shaking when the gun went off." (Lodgment No. 2(j), Rep.'s Tr. vol. 12, 3398, May 22, 1992.)

On December 16, 1991, the police found a nine-millimeter handgun and ammunition in Trevino's bedroom. (Lodgment No. 2(f), Rep.'s Tr. vol. 8, 2316–17.) Casings from the crime scene matched casings fired from the gun. (Lodgment No. 2(i), Rep.'s Tr. vol. 11, 3060, 3062, 3065–66, May 21, 1992.)

On January 1, 1992, Kinsey was interviewed by Detective Swiskowski about the conversations at Connelly's apartment. (Lodgment No. 2(h), Rep.'s Tr. vol. 10, 2816–17.) He told the detective that he thought Trevino might have shot the guy. (*Id.* at 2817.) Kinsey described the conversation: "They were mostly talking. Oh, I wonder if they got the license plate or this and that, you know. Nobody, you know, no one said nothing about the guy [the victim of the shooting]." (*Id.* at 2818.) Yet, on March 17, 1992, Kinsey told the deputy district attorney and his investigator that inside the Connelly apartment Trevino said "something to the effect of he thought the man [the victim] had seen them, their car and possibly even their license[.]" (*Id.* at 2816.)

## II. PROCEDURAL BACKGROUND

On February 21, 1992, the San Diego County District Attorney filed an information charging Trevino, Connelly, Gutierrez, and Kinsey with murder, *see* Cal.Penal Code § 187(a) (West 1999), conspiracy to shoot at an unoccupied vehicle, *see* Cal.Penal Code § 182(a)(1) (West Supp.2007), and shooting at an unoccupied vehicle, *see* Cal.Penal Code § 247(b) (West 1999). It was further alleged that Petitioner used a firearm, and he inflicted great bodily injury in a drive-by shooting, *see* Cal.Penal Code §§ 12022.5, 12022.55, 12022.7 (West Supp.2007). (Lodgment No. 1, Clerk's Tr. vol. 1, 1–4, Feb. 21, 1992.)

On March 3, 1992, Trevino's attorney filed a motion to sever Petitioner's trial from that of his codefendants. (*Id.* at 33–34, Mar. 3, 1992.) A motion to sever was also filed by counsel for codefendant Gutierrez. (*Id.* at 93–94, Apr. 27, 1992.) Both motions were denied, and the case proceeded jointly against all four defendants. (Lodgment No. 2(c), Rep.'s Tr. vol. 4, 1299, May 11, 1992.)

Trevino was originally represented by attorney Hank Howlett, but Howlett was relieved and attorney Brent Barnes substituted in as counsel on April 10, 1992. (Lodgment No. 1(a), Clerk's Tr. vol. 2, 361, Apr. 10, 1992; Lodgment No. 1(a), Clerk's Tr. vol. 2, 343, July 20, 1992; Lodgment No. 3, Rep.'s Tr. vol. 1, 7, Apr. 10, 1992.) Barnes filed a motion to continue the trial date to allow time for him to prepare, but the motion was denied on April 27, 1992, the date set for trial to begin. (Lodgment No. 1, Clerk's Tr. vol. 1, 13, Apr. 22, 1992; Lodgment No. 1(a), Clerk's Tr. vol. 2, 363, Apr. 27, 1992; Lodgment No. 3(b), Rep.'s Tr. vol. 3, 2, Apr. 27, 1992.) The case was assigned to a trial department and trailed for a week to May 4, 1992. (Lodgment No. 3(b), Rep.'s Tr. vol. 3, 3.) Counsel filed a second motion to continue the trial, which was granted; trial was trailed to May 11, 1992, two weeks after the original trial date of April 27. (Lodgment No. 1, Clerk's Tr. vol. 1, 27–28, May 1, 1992; Lodgment No. 1(a), Clerk's Tr. vol. 2, 367, May 4, 1992.) On May 11, Barnes renewed his request for a further continuance, but the request was denied. (Lodgment No. 2(c), Rep.'s Tr. vol. 4, 1250–51, 1255.)

Kinsey pled guilty to one count of shooting at an unoccupied vehicle, and trial proceeded against Trevino, Connelly, and Gutierrez. (*See* Lodgment No. 2(b), Rep.'s Tr. vol. 3, 1009, May 5, 1992; Lodgment No. 11, *People v. Trevino,* No. D017215, slip op. at 14 (Cal.Ct.App. Nov. 15, 1993).) The jury convicted Petitioner of all charges and found each of the special allegations were true. (Lodgment No. 1, Clerk's Tr. vol. 1, 170–74, 185, June 4, 1992; Lodgment No. 1(a), Clerk's Tr. vol. 2, 352–54, July 21, 1992.)

On July 7, 1992, Trevino's attorney filed a motion for a new trial or for modification of the verdict. (Lodgment No. 1(a), Clerk's Tr. vol. 2, 309, July 7, 1992.) Petitioner claimed there was "newly-discovered" evidence gained through an investigation of the crime scene that would support the defense's theory that the victim was not shot at "point-blank" range. (*Id.* at 312.) Trevino filed a supplemental memorandum in support of his motion for new trial arguing that the facts showed the killing was not premeditated, so Trevino's conviction on count one should be reduced from first-degree murder to a lesser offense. (*Id.* at 337.) The motion was denied. (*Id.* at 423, July 21, 1992; Lodgment No. 2(p), Rep.'s Tr. vol. 18, 28, July 21, 1992.) Petitioner was sentenced to an aggregate term of thirty years to life. (Lodgment No. 1(a), Clerk's Tr. vol. 2, 352–54; Lodgment No. 2(p), Rep.'s Tr. vol. 18, 45.)

Trevino filed a notice of appeal on July 28, 1992. (Lodgment No. 1(a), Clerk's Tr. vol. 2, 355, July 28, 1992.) Petitioner argued on appeal that he was deprived of effective assistance of trial counsel by (1) the court's denial of his motion for a reasonable continuance, (2) his attorney's objection to jury instructions regarding accomplice testimony, and (3) his attorney's failure to move to sever the trial based on conflicting defenses. (*See* Lodgment No. 4, Appellant's Opening Brief at 9, 15, 31, *People v. Trevino*, No. D017215 (Cal.Ct. App. Nov. 15, 1993).) Trevino also filed a petition for writ of habeas corpus, which the court of appeal considered simultaneously with his appeal. (Lodgment No. 5, Pet. at 1, *In re Trevino*, No. D018750 (Cal.Ct.App. Nov. 15, 1993); Lodgment No. 6, *In re Trevino*, No. D018750, order at 1 (Cal.Ct.App. Apr. 22, 1993).)

The California Court of Appeal affirmed the trial court's judgment and denied Trevino's petition for writ of habeas corpus. (Lodgment No. 11, *Trevino*, No. D017215, slip op. at 20.) Petitioner filed a petition for rehearing, which was denied. (Lodgment No. 12, Pet. for Reh'g at 1, *People v. Trevino*, No. D017215 (Cal.Ct.App. Dec. 10, 1993); Lodgment No. 13, *People v. Trevino*, No. D017215, slip op. at 1 (Cal.Ct. App. Dec. 10, 1993).) Trevino then filed a petition for review in the California Supreme Court; the petition was denied on February 23, 1994. (Lodgment No. 14, Pet. for Review at 1, *People v. Trevino*, No. S036813 (Cal. Feb. 23, 1994); Lodgment No. 16, *People v. Trevino*, No. S036813, slip op. at 1 (Cal. Feb. 23, 1994).) The California Supreme Court also denied a petition for writ of habeas corpus filed by Petitioner at the same time as his petition for review. (Lodgment No. 15, Pet. at 1, *In re Trevino*, No. S036814 (Cal. Feb. 23, 1994); Lodgment No. 17, *In re Trevino*, No. S036814, docket at 1 (Cal. Feb. 23, 1994).)

On December 21, 1994, Petitioner turned to federal court and filed a Petition for Writ of Habeas Corpus [doc. no. 1]. Magistrate Judge Roger C. McKee issued a Report and Recommendation Re: Denial for Failure to Exhaust State Remedies [doc. no. 5], and District Judge Irma E. Gonzalez adopted the Report and Recommendation and dismissed the Petition [doc. nos. 6, 7] on September 8, 1995. Over seven months later, on April 18, 1996, Petitioner moved to withdraw the unexhausted claim from the Petition and for reconsideration [doc. no. 8]. The district court did not rule on Trevino's motion because his Petition had been dismissed, stating, "[d]ocuments filed by petitioner since the closing date will be disregarded and no orders will issue in response to future filings." (Order 1, May 15, 1996.)

Trevino's First Amended Petition [doc. no. 11], submitted over seven years later, was filed *nunc pro tunc* to January 29, 2004. The district court construed the Petition as a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b) [doc. no. 12], and it denied the motion on May 21, 2004, finding Trevino had not presented "extraordinary circumstances" that warranted relief from judgment. (Order Den. Pet'r's Mot. Relief From J. 7.) Petitioner then filed a Motion for Reconsideration [doc. no. 23].

While the Motion for Reconsideration was pending, Trevino filed a Notice of Appeal of Judge Gonzalez's Order denying relief from judgment [doc. no. 28]. The district court issued a Certificate of Appealability [doc. no. 30] on July 2, 2004. Judge Gonzalez then denied Petitioner's Motion for Reconsideration because the district court lacked jurisdiction in light of Trevino's appeal to the Ninth Circuit. (Order Den. Pet'r's Mot. Reconsideration 2.)

The Ninth Circuit Court of Appeals reversed the district court's denial of Trevino's Motion for Reconsideration and remanded the case with instructions to consider the First Amended Petition on the merits [doc. no. 41]. (*Trevino v. Prunty*, 150 Fed.Appx. 741, 742–43 (9th Cir.2005).) On August 18, 2006, Respondent Michael Evans[1] filed an Answer [doc. no. 49], and he filed a Notice of Lodgment [doc. no. 50] on August 21, 2006. Petitioner then filed a Traverse [doc. no. 51] on October 10, 2006. In a letter brief filed on February 22, 2007, Trevino's attorney informed the Court of a recent Ninth Circuit decision, *Lankford v. Arave*, 468 F.3d 578 (9th Cir.2006), and asserts that the case is relevant new authority [doc. no. 52].

### III. STANDARD OF REVIEW

Counsel for Petitioner contends that Trevino is entitled to habeas relief under the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C.A. § 2244 (West 2006). (Traverse 3–23.) Respondent, on the other hand, argues that the presumption of correctness under the pre-AEDPA version of § 2254(d) applies "to the state court's factual findings." (Answer 2.) He does not contend that AEDPA is applicable.

The amended statute, with its more deferential review requirements, does not apply to federal habeas petitions pending on April 24, 1996. *Woodford v. Garceau*, 538 U.S. 202, 204, 123 S.Ct. 1398, 155 L.Ed.2d 363 (2003) (citing *Lindh v. Murphy*, 521 U.S. 320, 326, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)). Because Trevino's Petition was filed on December 21, 1994, AEDPA does not govern this case. *See Woodford*, 538 U.S. at 204, 123 S.Ct. 1398; *Phillips v.*

*Woodford*, 267 F.3d 966, 973 (9th Cir.2001). *But see Sanchez v. Gilmore*, 189 F.3d 619, 622–23 (7th Cir.1999) (applying AEDPA to a second petition filed after 1996 when an earlier, pre-AEDPA petition was dismissed for failure to exhaust).

In *Phillips*, the petitioner filed his original petition before AEDPA was enacted on April 24, 1996. "Following the district court's dismissal of that petition, we reversed and remanded, and Phillips filed the instant amended petition on July 15, 1996. In these circumstances, we treat Phillips's amended petition—filed after AEDPA's effective date—as part of his earlier, erroneously dismissed petition, and apply pre-AEDPA law." *Phillips*, 267 F.3d at 973. Because the procedural history of Petitioner's case mirrors that in *Phillips*, pre-AEDPA law applies to Trevino's claims.

In 1996, Congress "worked substantial changes to the law of habeas corpus." *Moore v. Calderon*, 108 F.3d 261, 263 (9th Cir.1997). Before and since the passage of AEDPA, some requirements have remained constant. To present a cognizable federal habeas corpus claim, a state prisoner must allege that his conviction was obtained "in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C.A § 2254(a) (West 2006). Petitioner must allege that the state court violated his federal constitutional rights. *See Reed v. Farley*, 512 U.S. 339, 347, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994); *Hernandez v. Ylst*, 930 F.2d 714, 719 (9th Cir.1991); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir.1990).

A federal district court does "not sit as a 'super' state supreme court" with general supervisory authority over the

---

1. The Court *sua sponte* substitutes Michael Evans, Warden of Salinas Valley State Prison, for K.W. Prunty, former Warden. *See* Fed. R.Civ.P. 25(d)(1); *Ortiz–Sandoval v. Gomez*, 81 F.3d 891, 894 (9th Cir.1996).

proper application of state law. *Smith v. McCotter,* 786 F.2d 697, 700 (5th Cir.1986); *see also Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990) (holding that federal habeas courts must respect a state court's application of state law); *Jackson,* 921 F.2d at 885 (concluding that federal courts have no authority to review a state's application of its law). Federal courts may grant habeas relief only to correct errors of federal constitutional magnitude. *Oxborrow v. Eikenberry,* 877 F.2d 1395, 1400 (9th Cir.1989) (stating that federal courts are not concerned with errors of state law unless they rise to the level of a constitutional violation).

"Under pre-AEDPA law, the state court's findings of fact are 'entitled to a presumption of correctness' unless they are 'not fairly supported by the record.'" *Clark v. Brown,* 450 F.3d 898, 904 (9th Cir.), *cert. denied,* —— U.S. ——, 127 S.Ct. 555, 166 L.Ed.2d 423 (2006) (quoting *Silva v. Woodford,* 279 F.3d 825, 835 (9th Cir. 2002)). Questions of law are reviewed de novo. *Clark, id.* Mixed questions of law and fact are also subject to de novo review. *Correll v. Ryan,* 465 F.3d 1006, 1009 (9th Cir.2006) (reviewing ineffective assistance of counsel claim); *Clark,* 450 F.3d at 904 (stating that harmless error is reviewed de novo).

## IV. DISCUSSION

Petitioner claims he was denied effective assistance of counsel because: (1) The trial court denied his counsel's requests for a continuance, leaving his attorney with inadequate time to prepare for trial; (2) his attorney failed to seek a severance of his trial from that of his codefendants due to inconsistent defenses; and (3) his attorney objected to giving a jury instruction regarding accomplice testimony. (*See* Am. Pet. 4–12; Traverse 3–23.)

In deciding a habeas petition, this Court reviews the "last reasoned" state court decision. *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *Medina v. Hornung,* 386 F.3d 872, 877 (9th Cir.2004). The California Supreme Court summarily denied Trevino's petition for review. (Lodgment No. 16, *Trevino,* No. S036813, slip op. at 1.) Therefore, this Court "looks through" that dismissal to the California Court of Appeal's decision on Petitioner's direct appeal. *Medina,* 386 F.3d at 877.

### A. *The Trial Court's Denial of Counsel's Motions for Continuance Did Not Deny Trevino Effective Assistance of Counsel.*

Petitioner's first habeas claim for relief is that he did not receive effective assistance of counsel because the trial court denied his newly-retained counsel's motions for a continuance to prepare for trial. (*See* Am. Pet. 1–8; Traverse 3–9.) Trevino alleges he was deprived of his "right to competent counsel" in violation of the Sixth and Fourteenth Amendments and the Supreme Court's holding in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). (Traverse 3.)

The California Court of Appeal did not analyze this claim under *Strickland;* the case law cited and arguments made to the court indicated that Trevino was asserting a due process claim. (*Compare* Lodgment No. 11, *Trevino,* No. D017215, slip op. at 5–6, *with* Lodgment No. 4, Appellant's Opening Brief at 9–14, *People v. Trevino,* No. D017215.) The court examined whether the lower court abused its discretion in denying Trevino's motions for a continuance: "A review of the procedural record convinces us the trial court did not abuse its discretion in denying Trevino's counsel's requests for continuances and hence Trevino was not denied due process

of law." (Lodgment No. 11, *Trevino*, No. D017215, slip op. at 7.) The appellate court did not address the ineffective assistance of counsel aspect of this ground for relief. (*See id.* at 6 n. 4.)

Here, Trevino is raising more than a due process violation; he appears to be arguing a combined due process and ineffective assistance of counsel claim. (*See* Am. Pet. 4–8; Traverse 3–9.) Analogous facts and claims have been asserted in a variety of ways. For example, in *Castillo v. Matesanz*, 348 F.3d 1, 4 (1st Cir.2003), Castillo asserted that "the state court's rejection of his two new trial claims-a due process violation in denying [a] continuance and ineffective assistance of counsel—warranted habeas relief." Castillo argued that controlling case law was *Ungar v. Sarafite*, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964), the same case cited by Trevino. *Id.* at 9. *Ungar* requires the reviewing court to examine the circumstances presented at the time of the request for a continuance. *Id.* It must determine whether a denial of a continuance was "so arbitrary as to violate due process." *Id.* (quoting *Ungar*, 376 U.S. at 589, 84 S.Ct. 841.) After deciding that a due process violation had not occurred, the court reviewed Castillo's separate claim that he received ineffective assistance of counsel in violation of *Strickland. Id.* at 10–16.

In *United States v. Stewart*, 256 F.3d 231, 244 (4th Cir.2001), one of the appellants made an argument similar to Trevino's: "[Appellant] Livingston next contends that the district court violated his Sixth Amendment right to effective assistance of counsel by denying Livingston's motion for a continuance because the denial forced his counsel to proceed to trial without adequate preparation time." The Fourth Circuit required Livingston to prove "first that the district court abused its discretion in denying the continuance

motion and second that the denial 'specifically prejudiced' his case." *Id.*

Whether viewed as a due process claim or the first half of a combined due process and ineffective assistance of counsel claim, Trevino must show, at a minimum, that the trial court abused its discretion in denying a continuance. *See Morris v. Slappy*, 461 U.S. 1, 11–12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983); *Williams v. Stewart*, 441 F.3d 1030, 1056 (9th Cir.), *cert. denied*, —— U.S. ——, 127 S.Ct. 510, 166 L.Ed.2d 381 (2006).

### 1. Continuance of the Trial

■ Although an attorney must be able to conduct a reasonable investigation into his client's case, "[n]ot every restriction on counsel's time or opportunity to investigate or consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel." *Morris v. Slappy*, 461 U.S. at 11, 103 S.Ct. 1610 (citing *Chambers v. Maroney*, 399 U.S. 42, 53–54, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970)). Defendants do not have an absolute right to a continuance to allow counsel more time to prepare. *United States v. Poston*, 902 F.2d 90, 96 (D.C.Cir.1990). "The denial of a continuance contravenes a defendant's Sixth Amendment right to counsel only when there has been 'an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay.'" *United States v. Hedgepeth*, 418 F.3d 411, 423 (4th Cir.2005) (quoting *Morris*, 461 U.S. at 11–12, 103 S.Ct. 1610).

Trevino complains that the trial court failed to delay the trial date to give his attorney adequate time to prepare. (Am. Pet. 4–8; Traverse 3–9.) In support of this claim, Petitioner refers to requests made for a continuance on April 10, 27, 30, May 4 and 11. (Am. Pet. 7; Traverse 4–6.) Trevino argues that the evidence pro-

duced in support of his motion for a new trial and state habeas petition establishes that the state trial and appellate courts' findings of fact are not entitled to a presumption of correctness. (Traverse 7–8.) This post-trial evidence, however, does not compel habeas relief.

A reviewing court decides whether a denial of a continuance is arbitrary and violates due process based upon *"the reasons presented to the trial judge at the time the request is denied."* *Ungar*, 376 U.S. at 589, 84 S.Ct. 841 (emphasis added). Consequently, evidence presented in a post-trial motion or state habeas petition is not relevant to Petitioner's claim.

The Court may consider "whether previous continuances have been granted; whether the parties, the court, or counsel would be inconvenienced; whether there are legitimate reasons for the delay; whether the denial would prejudice the defendant; and whether the delay is the defendant's fault." *Williams*, 441 F.3d at 1056. The California Court of Appeal examined "all relevant circumstances and specifically the reasons presented to the trial court at the time the request [for a continuance] was denied." (Lodgment No. 11, *People v. Trevino*, No. D017215, slip op. at 6–7.) Trevino made multiple requests to continue his trial. (Lodgment No. 11, *People v. Trevino*, D017215, slip op. at 5–9.) On April 10, 1992, Petitioner's new counsel requested a thirty-day continuance. (*Id.* at 7.) The reasons are part of the record. (Lodgment No. 3, Rep.'s Tr. vol. 1, 3–7.) New counsel stated that he had been looking at the case for about three weeks and was "somewhat familiar" with it and some of the issues. (*Id.* at 3.) He also reviewed the videotapes of the interrogations from 6:00 p.m. to 3:00 a.m. one night. (*Id.* at 6.) "[T]he trial court advised Barnes he would let him in the case if he was ready to proceed on April

27. The offer was accepted and the court confirmed the April 27 date." (Lodgment No. 11, *People v. Trevino*, D017215, slip op. at 7.) The trial, however, did not begin until May 11, which was thirty days from the date of the original request for a continuance. (*Id.*)

The next motion to continue the trial was argued on April 27, the day set for trial. (Lodgment No. 3(b), Rep.'s Tr. vol. 3, 1–3; Lodgment No. 1, Clerk's Tr. 13.) The motion, filed on April 22, 1992, stated that "defense experts and investigators will not have completed their tasks, that discovery materials (specifically, photo negatives) either have not been received or were received too late for trial and witness preparation . . . ." (Lodgment No. 1, Clerk's Tr. 13.) In addition, on April 27, counsel announced that he was "not ready" and argued for more time. (Lodgment No. 3(b), Rep.'s Tr. vol. 3, 1.)

> The rationale for the continuance is the continuing availability of some discovery; and that is some photographs that we've asked for, the—plus a more recent order permitting investigations and a re-enactment. And I have investigators working on the matter. I have an expert familiarizing himself with the matter and working on it. And for all of these reasons, Mr. Trevino needs a continuance in order to get effective representation in trial.

(*Id.*) Barnes explained that he had "a recently appointed expert who was appointed finally by order of this court." (*Id.* at 2.) The court disagreed: "No, sir, that expert was involved before." (*Id.*) In an earlier declaration, counsel stated that on April 13, 1992, he "called the office of Criminalist Parker Bell, with whom Mr. Howlett [prior counsel] had made some arrangements for a re-enactment." (Lodgment No. 1, Clerk's Tr. vol. 1, 12.) Although the court nominally denied the April 27 mo-

tion, (Lodgement 3(b), Rep.'s Tr. vol. 3, 2), the judge assigned the matter to another trial department and stated, "That will give you approximately a week and a half to do whatever you have to do, counsel." (*Id.* at 3.)

Another request for a continuance was made on May 4, 2002. (Lodgment No. 3, Rep.'s Tr. vol. 1, 8.) Judge Murphy became available to try the case before the scheduled May 11 trial date; Trevino's counsel acknowledged that "we would have started trial on the 11th [but stated that he] would like more time." (*Id.* at 9.) Barnes explained, "[I]t is just that my time was very tightly allocated, and then I got side tracked on several other things, unfortunately, including that which was the Rodney King verdict in the Los Angeles case. That emotionally kind of messed me up." (*Id.*) The court then agreed that the case could be trailed to May 11th. (*Id.*)

On May 11, Trevino's counsel made his last motion to continue the trial. (Lodgment No. 2(c), Rep's Tr. vol. 4, 1250–52.) Barnes recounted the history of his previous requests and that he did not receive the anticipated help of volunteer attorneys. (*Id.*) He concluded: "I do not feel as comfortable as I would like to be in trying this case because I'm not prepared as well as I would like to be." (*Id.* at 1252.) The trial court denied the motion, and trial began the next day, May 12. (*Id.* at 1255, 1402.)

Trevino's claim requires that the Court examine each sequential request for a continuance and the basis for each request. The Court also examines Petitioner's collective requests for a continuance and the additional preparation time that counsel was given.

The superior court accommodated Trevino's request for additional time, balanced the conflicting demands on the prosecution and codefendants, and considered the stated reasons for continuances. In this con-text, the actual and ostensible denials of Trevino's motions to continue the trial date were not abuses of discretion, and the state court's determination of the facts are fairly supported by the record in light of the evidence presented. *Clark,* 450 F.3d at 904.

If Trevino's first ground for relief is a due process claim, the road to habeas relief ends here. Because he may be asserting a combined due process and ineffective assistance of counsel claim, the Court will turn to the ineffective assistance aspect of the claim.

## 2. Reasonableness of Counsel's Performance

In spite of Petitioner's other complaints about trial counsel's actual ineffectiveness, the first ground for habeas relief asserts that with more preparation time his attorney "would have presented demonstrative evidence showing how dark the trailer park was on the night of the shooting," and he would have "investigators gather evidence of how dark the trailer park was on a cloudless night . . . ." (Traverse 6.)

Ineffective assistance of counsel can arise in two ways: The government may violate a defendant's right to effective assistance by interfering with counsel's ability "to make independent decisions about how to conduct the defense[,]" or an attorney may simply fail to render adequate representation. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (citations omitted). One group of claims refers to government interference; the other refers to actual ineffectiveness. *Id.* Although Trevino's second and third claims for habeas relief allege "actual ineffectiveness" of attorney Barnes, his first claim asserts that the trial court's decisions to deny his counsel's requests for continuances interfered with the

attorney's ability to properly investigate and present the defense. (*See* Am. Pet. 4–8, 11; Traverse 6–7, 9–10, 16–18.)

The Sixth Amendment guarantees criminal defendants effective assistance of counsel. *Dows v. Wood*, 211 F.3d 480, 484 (9th Cir.2000); *see McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (stating "the right to counsel is the right to the effective assistance of counsel"). In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, the Supreme Court set the federal standard for resolving ineffective assistance of counsel claims. These claims have two prongs that must both be satisfied. First, counsel's performance must have been deficient in that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88, 104 S.Ct. 2052. Second, "the defendant must show that the deficient performance prejudiced the defense"; in other words, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 687, 694, 104 S.Ct. 2052.

The Court need not address both prongs if the petitioner alleging ineffective assistance makes an insufficient showing on one. *Id.* at 697, 104 S.Ct. 2052. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

 "[B]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Strickland*, 466 U.S. at 698, 104 S.Ct. 2052. The presumption of correctness applies to "state court findings of fact made in the course of resolving claims of ineffective assistance of counsel ...." *Lambert v.*

*Blodgett*, 393 F.3d 943, 977 (9th Cir.2004). But the state court's conclusion that counsel rendered effective assistance or the application of federal law to state court factual findings is reviewed de novo. *Correll v. Ryan*, 465 F.3d at 1009.

"A lawyer generally is presumed competent, and it is the burden of the accused to overcome this presumption." *Dows*, 211 F.3d at 485 (citing *United States v. Cronic*, 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)); *see also Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. Courts will presume that a defendant has suffered prejudice "when counsel was either totally absent or prevented from assisting the accused during a critical stage of the proceedings, or if counsel entirely failed to subject the prosecution's case to meaningful adversarial testing." *Hays v. Alabama*, 85 F.3d 1492, 1496–97 (11th Cir. 1996) (citing *Cronic*, 466 U.S. at 662, 104 S.Ct. 2039); *see also Dows*, 211 F.3d at 485. Otherwise, "the defendant must point to specific errors made by defense counsel that undermine confidence in the outcome of the trial." *United States v. LaRouche*, 896 F.2d 815, 823 (4th Cir. 1990); *see Strickland*, 466 U.S. at 693–96, 104 S.Ct. 2052; *Cronic*, 466 U.S. at 659 n. 26, 104 S.Ct. 2039 (citations omitted).

Attorney Barnes's motion for continuance, filed on April 22, 1992, claimed that he needed additional time to receive and review discovery and for experts and investigators to complete their tasks. (Lodgment No. 1, Clerk's Tr. vol. 1, 13.) The case was assigned to a trial department, but it was trailed to May 4, 1992. (Lodgment No. 3(b), Rep.'s Tr. vol. 3, 3.) Trial was again trailed to May 11, 1992. (Lodgment No. 3, Rep.'s Tr. vol. 1, 9.)

On May 11, Barnes made a request for a further continuance, claiming he did not feel as prepared as he would like to be,

even though he had been devoting all his time to trial preparation. (Lodgment No. 2(c), Rep.'s Tr. vol. 4, 1251–52.) At that time he indicated his investigator did not start work on the case until April 23. (*Id.* at 1254.) The judge denied the motion. (*Id.* at 1255.)

 "Where counsel has no acquaintance with the facts of the case and no opportunity to plan a defense, the result is that the defendant is effectively denied his constitutional right to assistance of counsel." *Chambers v. Maroney*, 399 U.S. at 59, 90 S.Ct. 1975 (quoting *Avery*, 308 U.S. at 446, 60 S.Ct. 321). That is not the case here. Trevino went to trial one month after Barnes substituted in as counsel; Barnes had already been looking at the case for three weeks and was familiar with it and some of the issues. (*See* Lodgment No. 3, Rep.'s Tr. vol. 1, 3, 6.) When Barnes replaced Howlett on April 10, 1992, the court warned him that trial was set for April 27, and he must be ready to go to trial on that date. (*Id.* at 6–7.) Counsel agreed. (*Id.* at 7.) Trial did not begin until May 11, giving Barnes an additional two weeks beyond the April 27 trial date to prepare. Barnes devoted a significant amount of time to preparing for trial: "Once I took on this case, I ceased all meaningful work on other matters at my office." (Lodgment No. 5, Barnes Decl. at 3, Apr. 6, 1993.) Barnes also had the assistance of two volunteer attorneys who worked long hours to help Barnes prepare. (Lodgment No. 2(a), Rep.'s Tr. vol. 2, 288, Apr. 30, 1992.)

The superior court did not abuse its discretion in denying Barnes's requests for further continuances. Furthermore, its rulings do not constitute an unconstitutional interference with counsel's ability to make independent decisions about conducting Trevino's defense. In *United States v. Cronic*, 466 U.S. at 658–60, 104

S.Ct. 2039, the Court stated that there are "circumstances that are so likely to prejudice the accused" that prejudice is presumed. "But every refusal to postpone a criminal trial will not give rise to such a presumption." *Id.* at 661, 104 S.Ct. 2039. "*Cronic's* presumption of prejudice applies to only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all." *Chadwick v. Green*, 740 F.2d 897, 901 (11th Cir.1984).

The Court will not presume Petitioner was prejudiced simply because his counsel had a limited amount of time to prepare for trial. *See, e.g., Cronic*, 466 U.S. at 665, 104 S.Ct. 2039 (twenty-five days to prepare for trial was not presumptively prejudicial); *Conklin v. Schofield*, 366 F.3d 1191, 1202 (11th Cir.2004) (thirty-seven days); *Glover v. Miro*, 262 F.3d 268 (4th Cir.2001) (two days).

Even if the state court abused its discretion in denying the continuance, this is not a case where it hampered defense counsel's efforts to the extent that prejudice may be presumed. *See United States v. Stewart*, 256 F.3d at 244 (stating that to prove ineffective assistance based on wrongful denial of a continuance, the defendant must show the court abused its discretion and the defendant suffered specific prejudice).

### 3. Prejudice

Whether Trevino is complaining of government interference with his right to counsel or the actual ineffectiveness of trial counsel, Petitioner must be prejudiced to obtain habeas relief. *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052. Trevino must show a reasonable probability that the outcome would have been different if the trial court had granted a continuance. *Strickland*, 466 U.S. at 695, 104 S.Ct. 2052.

"When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. 2052.

■ "To determine whether counsel's errors prejudiced the outcome of the trial, we must compare the evidence that actually was presented to the jury with that which could have been presented had counsel acted appropriately." *Daniels v. Woodford*, 428 F.3d 1181, 1201 (9th Cir. 2005) (citing *Bonin v. Calderon*, 59 F.3d 815, 834 (9th Cir.1995)).

Trevino claims that with more time to prepare, his attorney would have investigated and presented evidence of the lighting on the night of the shooting. (Am.Pet. 8.) This evidence would have been used "to impeach the argument that petitioner saw the victim before shooting." (*Id.*) Trevino asserts that because it was dark that night, "it would have been extremely difficult if not impossible for petitioner to see the decedent before the decedent was shot[,]" so the killing could not have been premeditated. (Traverse 9.)

Barnes stated that both he and an investigator went to the scene of the December 2, 1991, shooting to examine the lighting. (Lodgment No. 5, Barnes Decl. at 4.) But the investigation occurred several months later, so Barnes could not obtain a reading of the light levels that would accurately depict the lighting on the night of the shooting. (Lodgment No. 1(a), Clerk's Tr. vol. 2, 350.) As counsel stated in his new trial motion, "If there had been sufficient time, or if there had been a clear night, I would have had light level evidence." (*Id.*) Nevertheless, Barnes was able to communicate his theory of the defense to the jury, including that it was dark, and Trevino may not have been able to see what he was shooting.

Under cross-examination, Joseph Kinsey, who was in the vehicle with Trevino, agreed that the trailer park was a "very dark place" that night. (Lodgment No. 2(h), vol. 10, 2820.) Kinsey admitted that they "were looking around in the dark trying to find the Blazer ...." (*Id.*) In addition, private investigator Bill Smith testified about the layout of the mobile home park where the shooting occurred. (Lodgment No. 2(j), Rep.'s Tr. vol. 12, 3402–05.) He described a lamppost near mobile home unit seventy-nine and stated that it only illuminated approximately thirty-five to thirty-nine feet. (*Id.* at 3407–08.)

In his closing, Trevino's counsel argued that his client couldn't see the victim. "He [the victim] might have been shot from out of the darkness. I don't know." (Lodgment No. 2(m), Rep.'s Tr. vol. 15, 4038, May 28, 1992.)

Those last two bullets could support, in reason, the second degree. It could, depends on whether or not he sees the guy behind the truck. If he doesn't see him, he can't be intending to shoot him; but if he saw him popping out it could support a second degree.

But my other suggestion that this may have come out of the dark, and they may have been passing a dying man, that's involuntary manslaughter.

(*Id.* at 4048–49.) There is no indication that with additional time Barnes could have gathered more evidence that would have changed the outcome.

"Some errors will have a pervasive effect on the inferences to be drawn from the evidence, ... and some will have an isolated, trivial effect." *Strickland*, 466 U.S. at 695–96, 104 S.Ct. 2052. "[I]n cases with overwhelming evidence of guilt, it is especially difficult to show prejudice from a claimed error on the part of trial coun-

sel." *Bonin,* 59 F.3d at 836 (quoting *United States v. Coleman,* 707 F.2d 374, 378 (9th Cir.1983)).

The prosecutor had strong evidence of guilt. Trevino's attorney did not dispute that Petitioner was the shooter; the question was whether his actions were premeditated murder or some lesser offense. (*See* Lodgment No. 2(m), Rep.'s Tr. vol. 15, 4001–03.) Kinsey testified that he saw the victim standing next to the truck before Trevino shot him, which contradicts Barnes's theory that it was too dark to see. (Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2624–25.) Gutierrez's statement was that "he saw an unknown man get shot." (Lodgment No. 1(a), Clerk's Tr. vol. 2, 284, May 22, 1992.) Connelly's statement, likewise, indicated that the victim was visible, although it was dark.

I drove my vehicle slowly through the park. I was told to and turned my headlights off as I got closer to the Blazer and saw the Blazer get shot. After I turned the corner, I saw a man standing by the truck. Like he was either talking to someone in the truck, or I'm not too sure, because, like, I turned, it was dark, and all I could see was like a black figure, someone like a shadow. I didn't know if he was shot or not, I didn't know exactly what happened cause [I] couldn't see, I was just driving. My headlights were still off when the man got shot.

(*Id.* at 287.) Kinsey testified that Petitioner said he shot Rodriguez because he thought the victim might have seen his face or the car's license plate. (Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2630.) Although these statements all came from coperpetrators, the jury found them credible and agreed with the prosecution that Trevino premeditated the killing.

Petitioner has failed to establish a probability that the outcome would have been different if his attorney was given more time to prepare. Trevino argues that counsel's error had a "substantial and injurious effect on the verdict[,]" citing *Brecht v. Abrahamson,* 507 U.S. at 627, 113 S.Ct. 1710. (Traverse 8.) This ineffective assistance claim, however, does not require a separate discussion under *Brecht.* "[B]ecause the prejudice analysis in *Strickland v. Washington,* . . . derived from the *Agurs* materiality standard, federal courts do not conduct a separate *Brecht* analysis in ineffective assistance of counsel claims." *Hayes v. Brown,* 399 F.3d 972, 985 (9th Cir.2005) (en banc). Thus, Trevino's first claim for habeas relief should be **DENIED.**

**B.** ***Trial Counsel's Failure to Seek a Severance Based on Inconsistent Defenses Was Not Ineffective Assistance of Counsel.***

In his second claim, Trevino argues that his attorney's failure to seek a severance of Trevino's trial from that of his codefendants' denied him effective assistance of counsel. (Am. Pet. 8–11; Traverse 16–23.) He contends Barnes should have requested a severance when it "became apparent that the codefendants' strategy would be to focus on petitioner's guilt as the shooter and to argue that he had fired the gun while they protested the use of any violence." (Traverse 17.)

Petitioner was tried jointly with codefendants Connelly and Gutierrez. Kinsey, who would have been a codefendant, pled guilty to one count of shooting at an unoccupied vehicle in exchange for cooperating with the prosecution and testifying against the other defendants. (Lodgment No. 2(a), Rep.'s Tr. vol. 2, 284.)

On March 3, 1992, Trevino's prior attorney, Hank Howlett, moved to sever the case based on the possibility that incriminating out-of-court statements made by

the codefendants would be admitted. (Lodgment No. 1, Clerk's Tr. vol. 1, 33.) After Barnes replaced Howlett as counsel on April 10, 1992, he joined in Howlett's motion for severance. (Lodgment No. 2(c), Rep.'s Tr. vol. 4, 1296–97.) Barnes also joined in a motion for separate trials filed by Gutierrez's counsel. (*Id.; see* Lodgment No. 1, Clerk's Tr. vol. 1, 93, Apr. 27, 1992.) The trial court denied the motions, instead deciding to redact the codefendants' statements before admitting them at trial. (Lodgment No. 2(c), Rep.'s Tr. vol. 4, 1299; Lodgment No. 2(e), Rep.'s Tr. vol. 7, 2039, May 15, 1992.) Barnes did not request a severance at any time after this.

In a declaration submitted with Trevino's state habeas petition, Barnes explained:

> At the time of in-limine motions (in preparation for which I had done no research), I had no concept or grasp of the conflict between an appropriate defense of my client and that of his codefendants. I frankly never thought of moving for a severance based upon inconsistent theories of defense.

(Lodgment No. 5, Pet., Decl. of Barnes 5, *In re Trevino,* No. D018750.) Pointing to this statement, Trevino now argues that his counsel's failure to seek a severance based upon inconsistent defenses among the codefendants was not "informed by adequate and competent investigation of the law and facts." (Traverse 19.) Barnes acknowledges that he did not realize until late in the presentation of evidence that Trevino's defense may be inconsistent with that of his codefendants. (Lodgment No. 5, Barnes Decl. at 5.) Looking back, Barnes states he likely would have called his client to the stand to testify that he shot without seeing the victim and to attack Kinsey's credibility. (*Id.* at 5–6.)

The California Court of Appeal rejected Petitioner's claim of ineffective assistance under *Strickland* for failure to seek severance on the ground of inconsistent defenses, finding that Barnes had a "valid tactical basis" for not moving to sever. (Lodgment No. 11, *Trevino,* No. D017215, slip op. at 18–19.)

### 1. Reasonableness of Counsel's Performance

"A disagreement with counsel's tactical decisions does not provide the basis for declaring that the representation was constitutionally deficient." *Raley v. Ylst,* 470 F.3d 792, 799 (9th Cir.2006) (citing *United States v. Mayo,* 646 F.2d 369, 375 (9th Cir.1981)). Indeed, informed strategic choices are "virtually unchallengeable." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. "Whether to seek severance of defendants . . . is within the wide range of tactical decisions entrusted to trial counsel." *Johnson v. McGrath,* No. CV 03–8844–DDP, 2006 WL 2331006, at *15 n. 18 (C.D.Cal. Aug.2, 2006) (citing *Ryan v. Clarke,* 281 F.Supp.2d 1008, 1082 (D.Neb. 2003)). "It does not matter whether trial counsel made the best choice possible. The question is 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Sullivan v. Schriro,* No. CIV–04–1517–PHX–DGC(GEE), 2005 U.S. Dist. LEXIS 26339, at *36 (D.Ariz. Aug. 15, 2005) (quoting *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052).

Trevino asserts that Barnes rendered ineffective assistance because he "never even considered filing a motion to sever based on inconsistent defenses." (Am.Pet. 10.) But Barnes did join in Trevino's prior counsel's motion to sever based on the prejudicial effect of admitting the codefendants' statements into evidence. (Lodg-

ment No. 2(c), Rep.'s Tr. vol. 4, 1296–97; Lodgment No. 1, Clerk's Tr. vol. 1, 3–5.) Counsel argued that if tried jointly, statements by the codefendants implicating Trevino would be admitted. (Lodgment No. 2(c), Rep.'s Tr. vol. 4, 1296–97.) He asserted that the jury would link redacted statements of the two codefendants and other trial testimony to the detriment of Trevino. (*Id.*) Nevertheless, the court denied the motion to sever. (*Id.* at 1299; Lodgment No. 2(e), Rep.'s Tr. vol. 7, 2039, May 15, 1992.)

The trial court believed that the admission of edited statements protected Trevino's rights under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and *Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). (*Id.* at 1290–96.) According to Trevino, "acceptance of the co-defendants' defense precluded petitioner from being acquitted of first-degree murder." (Traverse 21–22.) Petitioner argues that "severance of defendants is required when 'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.' " (*Id.* at 20 quoting *Zafiro v. United States,* 506 U.S. at 539, 113 S.Ct. 933.)

This argument is not persuasive. First, *Zafiro* involved the interpretation of the Federal Rules of Criminal Procedure, not the United States Constitution. *Phillips v. Million,* 374 F.3d 395, 398 (6th Cir. 2004); *Hood v. Helling,* 141 F.3d 892, 898 (8th Cir.1998). Second, even "[m]utually antagonistic defenses are not prejudicial per se." *Zafiro,* 506 U.S. at 538, 113 S.Ct. 933. Trevino and the codefendants were not asserting truly irreconcilable defenses. Trevino did not dispute that he pulled the trigger. Instead, he contends, "Petitioner would not have been convicted of first-degree murder and would have had a

chance of being convicted of no more than manslaughter based on his shooting at the unoccupied Blazer." (Traverse 18.) To establish prejudice from a joint trial, "the defenses truly must be mutually exclusive, such that the jury could not believe the core of one defense without discounting entirely the core of the other." *United States v. Dirden,* 38 F.3d 1131, 1141 (10th Cir.1994). Finally, limiting instructions or some other measure will often cure any risk of prejudice. *Zafiro,* 506 U.S. at 539, 113 S.Ct. 933.

The California Court of Appeal observed that "the motion for severance due to conflicting defenses revolves around Barnes's tactical decision to join the codefendants in objecting to the jury being advised of Kinsey's status as an accomplice who had plea bargained with the prosecution." (Lodgment No. 11, *People v. Trevino,* D017215, slip op. at 19.) The state court found a "valid tactical basis" for objecting to accomplice instructions. (*Id.*) "Whether a particular decision by counsel was a tactical one is a question of fact, and the state court's resolution of that issue enjoys a strong presumption of correctness." *Holsomback v. White,* 133 F.3d 1382, 1386–87 (11th Cir.1998); *see Berryman v. Morton,* 100 F.3d 1089, 1095 (3d Cir.1996).

"The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores–Ortega,* 528 U.S. 470, 481, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). "Whether a particular tactical decision was a reasonable one, however, is a question of law . . . ." *Holsomback,* 133 F.3d at 1387.

In *Bonin,* the Ninth Circuit explained the *Strickland* performance standard: "Because we use an objective standard to evaluate counsel's competence, once an attorney's conduct is shown to be objectively reasonable, it becomes unnecessary to inquire into the source of the attorney's

alleged shortcomings." *Bonin v. Calderon*, 59 F.3d 815, 838 (9th Cir.1995) (finding that attorney's alleged drug use was not relevant). The Eleventh Circuit came to a similar conclusion in *Chandler v. United States*, 218 F.3d 1305, 1315 n. 16 (11th Cir.2000):

> "There are countless ways to provide effective assistance in any given case." [Citation omitted.] No lawyer can be expected to have considered all of the ways. If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And, our inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

In considering a claim of ineffective assistance, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . ." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. "With the benefit of long and deep reflection," Barnes now believes he would have done things differently. (See Lodgment No. 5, Barnes Decl. at 6.) This, however, does not make his performance unreasonable.

To establish that his attorney's performance was deficient, Trevino must show that "counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. Barnes's shortcomings do not fall to this level. He did not render deficient performance by failing to bring a second motion for a severance based upon defenses which were not truly irreconcilable. *See James v. Borg*, 24 F.3d 20, 27 (9th Cir.1994) (holding that "failure to

make a futile motion does not constitute ineffective assistance of counsel"); *Morrison v. Estelle*, 981 F.2d 425, 429 (9th Cir. 1992) (finding no ineffective assistance of appellate counsel for failure to make an argument that would not have been successful).

After Trevino's motion to sever and Gutierrez's motion for separate trials were both denied, there is no reason to believe that a further motion to sever, based on inconsistent defenses, would have been granted. Finally, even if the Court were to find that Barnes's performance was deficient due to his failure to investigate the viability of a motion to sever because of inconsistent defenses, the failure to show prejudice precludes relief.

**2. Prejudice**

Petitioner cannot establish prejudice because he has not shown he would have been granted a severance, especially in light of the court's ruling on the earlier motions. Because Trevino and his codefendants were not asserting truly irreconcilable defenses, this argument for a severance is not persuasive and was unlikely to succeed. There are no facts to suggest the judge would have ruled differently. *See McQueen v. Scroggy*, 99 F.3d 1302, 1316 (6th Cir.1996) (finding no prejudice from decision not to seek a separate trial "since it is clear that any such motion would have been denied[ ]"); *Collier v. United States*, 92 F.Supp.2d 99, 105 (N.D.N.Y.2000) ("[B]ecause a motion for a severance would have been unsuccessful, Petitioner's claim of ineffective assistance of counsel on that ground must fail.")

Furthermore, Trevino was not prejudiced by Barnes's failure to seek severance on this alternate ground, because if tried separately from his codefendants, the same evidence would have been admitted against Petitioner. (*See* Lodgment No. 11,

*Trevino,* No. D017215, slip op. at 20.) Kinsey would have testified, and Barnes would have been confronted with the same tactical choice of whether to inform the jury that Kinsey was an accomplice who entered a plea agreement with the prosecution. (*Id.* at 19–20.) Trevino cannot show he was prejudiced by his counsel's failure to file a second motion for severance. Thus, the district court should **DENY** Trevino's second claim.[2]

## C. Trial Counsel's Objection to Accomplice Instructions Did Not Deprive Petitioner of His Right to Effective Assistance of Counsel.

Trevino's third ground for habeas relief is that "he was denied effective assistance when his counsel objected to instructions that could have informed the jury that witness Joseph Kinsey ... was an accomplice." (Am. Pet. 5–7; Traverse 9–16.) Kinsey was one of the four men in the car during the shooting. (Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2619; Lodgment No. 2(h), Rep.'s Tr. vol. 10, 2788.) He agreed to plead guilty to shooting at an unoccupied vehicle in violation of California Penal Code section 247(b) in exchange for testifying against the other involved parties. (Lodgment No. 2(a), Rep.'s Tr. vol. 2, 284.)

Kinsey testified that Trevino shot the victim and that Trevino said he shot the victim because the victim may have seen his face or the license plate of their car. (Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2630; Lodgment No. 2(h), Rep.'s Tr. vol. 10, 2816–18.) Petitioner argues that if the accomplice instruction had been given, the jury would have reached a different verdict:

> Had Barnes insisted on the accomplice instructions and insisted on the jury knowing about Kinsey's very favorable plea agreement with the prosecution, the jury would have viewed Kinsey's testimony in an entirely different light and would have had a reasonable doubt as to whether petitioner premeditated before firing the gun.

(Am.Pet. 12.)

The state appellate court determined that Barnes had a "reasonable basis" for his decision regarding Kinsey's accomplice status. (Lodgment No. 11, *Trevino,* No. D018750, slip op. at 14.) Kinsey's signed plea agreement specified that he was to testify "fully and truthfully," and Barnes believed "introduction of the plea bargain documents ... would be detrimental to his

---

**2.** In Petitioner's Traverse, Trevino's counsel further argues that Petitioner was denied the right to a fair trial under the Fifth and Fourteenth Amendments when the court refused to grant a severance. (Traverse 19–22.) Counsel also alleges that the joint trial violated Trevino's Sixth Amendment right to confront and cross-examine witnesses against him, as set forth in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). (*Id.* at 21.)

"A Traverse is not the proper pleading to raise additional grounds for relief." *Cacoperdo v. Demosthenes,* 37 F.3d 504, 507 (9th Cir.1994). Although *Crawford* was decided in 2004, neither of these claims were presented to the state court on direct appeal or collateral review, before or while this action has been

pending. (*See* Lodgment No. 4, Appellant's Opening Brief, *Trevino,* No. D017215; Lodgment No. 5, Pet., *Trevino,* No. D018750.) Thus, they have not been exhausted in state court. 28 U.S.C.A. § 2254(b) (West 2006); *see Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Because they are unexhausted and not properly raised in the First Amended Petition, the Court would ordinarily not consider these new claims. Nevertheless, an unexhausted claim may be denied on the merits. 28 U.S.C.A. § 2254(b)(2) (West 2006). The Court, in *Whorton v. Bockting,* — U.S. ——, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007), recently decided that the rule set forth in *Crawford* is not retroactive, which precludes relief on Trevino's confrontation claim.

client." (*Id.* at 14.) These factual findings are presumed correct.

## 1. Reasonableness of Counsel's Performance

In California, when an accomplice testifies under a plea agreement, the court has a *sua sponte* duty to instruct the jury according to CALJIC Nos. 3.10–3.13, 3.18. *See People v. Gordon,* 10 Cal.3d 460, 466, 516 P.2d 298, 301, 110 Cal.Rptr. 906, 909 (1973). These instructions state that the accomplice's testimony must be corroborated and that the jury should view it with caution. *See* CALJIC Nos. 3.10–3.13, 3.18 (West 2005).

The reasonableness of counsel's actions depends on the facts of the case, "viewed as of the time of counsel's conduct." *Strickland v. Washington,* 466 U.S. at 690, 104 S.Ct. 2052. Petitioner contends: "[Barnes] had no time to think about any of it and decided to go along with the others [and object to accomplice instructions] because it seemed like a good thing to do. His decision was completely uninformed . . . ." (Traverse 12.)

The trial court discussed the accomplice instructions with counsel on May 12 and May 27, and both times Barnes joined in a request with the codefendants' counsel not to instruct the jury on accomplice testimony. (Lodgment No. 3(c), Rep.'s Tr. vol. 4, 66–70, May 12, 1992; Lodgment No. 2(*l*), Rep.'s Tr. vol. 14, 3759–60, May 27, 1992.) During a discussion with the court about voir dire questions to prospective jurors, defense lawyers gave the trial court their reasons for not discussing accomplice testimony and for objecting to accomplice instructions.

Codefendant Connelly's attorney stated that although he wanted to cross-examine Kinsey about his "deal with the district attorney's office," he did not want Kinsey's plea agreement admitted into evidence because it "contains a lot of self-serving endorsements of his testimony" which would prove he was telling the truth. (Lodgment No. 3(c), Rep.'s Tr. vol. 4, 66.) Codefendant Gutierrez's attorney did not want the plea bargain referred to at all, because if the jury knew what Kinsey pled guilty to, it would speculate on the other defendants' culpability in relation to Kinsey's, since they were all in the car when the shooting occurred. (*Id.* at 67.) Connelly's attorney changed his position and joined in that reasoning; he then withdrew his request to get into the plea bargain. (*Id.* at 67–68.) Barnes agreed and said, "I subscribe to it then, wholeheartedly." (*Id.* at 68.) The pros and cons of referring to Kinsey as an accomplice were fully discussed by the attorneys for the three codefendants.

Barnes made it clear that he was making a tactical choice to object to giving accomplice instructions, and in making that objection, he chose not to ask Kinsey about the plea agreement. (Lodgment No. 3(c), Rep.'s Tr. vol. 4, 68–70.) On May 27, 1992, during a discussion about jury instructions, Barnes noted that accomplice instructions "might have been appropriate if my client were to be tried alone. In fact, I would have virtually insisted on it." (Lodgment No. 2(*l*), Rep.'s Tr. vol. 14, 3759–60.) This reflects Barnes's consistent strategic decision that his client was better served by excluding evidence of Kinsey's plea bargain.

An attorney does not render ineffective assistance by failing to request jury instructions or by objecting to proposed instructions that are inconsistent with his trial theory. *Butcher v. Marquez,* 758 F.2d 373, 377 (9th Cir.1985). Barnes's trial strategy involved admitting that Trevino was the shooter but arguing that the shooting was not premeditated and that Petitioner did not conspire with anyone to

commit the shooting. (*See* Lodgment No. 2(m), Rep.'s Tr. vol. 15, 3997–4003, May 28, 1992.) Kinsey refuted this theory by testifying that Trevino stated he shot the victim to avoid being identified. Barnes decided to attack Kinsey's credibility as a witness rather than as an accomplice, and Barnes did this by pointing out inconsistencies in Kinsey's testimony. (*Id.* at 3997–99, 4046–48.)

Although Trevino contends his counsel made the wrong decision regarding Kinsey's accomplice status, at the time of the trial, Barnes had a reasonable basis for that decision. He and other defense counsel believed the introduction of the plea bargain documents, which would result from the designation of Kinsey as an accomplice, would be detrimental to their clients. Although Barnes indicated that in a separate trial he might have chosen differently, this was not a separate trial. (Lodgment No. 11, *People v. Trevino*, D017215, slip op. at 14.) Counsel's tactical decision did not constitute ineffective assistance.

*Lankford v. Arave*, 468 F.3d 578, recently cited by Trevino, does not change this result. In *Lankford*, two brothers were tried for a double murder in separate state court trials. *Id.* at 580. Bryan Lankford testified for the prosecution at Mark's trial. "Under cross examination, Bryan admitted at trial that he expected to receive an indeterminate life sentence in return for his testimony." *Id.* at 580 n. 1. The attorney for Mark Lankford requested three jury instructions regarding accomplice testimony. One instruction told the jurors that accomplice testimony may be considered even though *not corroborated* by other evidence; the second informed the jurors that accomplice testimony *needed to be corroborated;* and the third defined corroboration. (*Id.* at 582–83.)

Idaho law precludes the use of accomplice testimony to support a conviction unless it is "corroborated by other evidence." *Id.* at 584. The federal district and appellate courts both found "no reasonable tactical advantage in requiring an erroneous instruction that would allow the jury to give greater weight to Bryan's testimony." (*Id.* (footnote omitted).) The Ninth Circuit noted: "In this case, '[c]ounsel's errors with jury instructions were not a strategic decision to forego one defense in favor of another. They were the result of a misunderstanding of the law.'" *Id.* (quoting *United States v. Span*, 75 F.3d 1383, 1390 (9th Cir.1996)).

This is where *Lankford* and Trevino part company. Trevino's attorney did not misunderstand the law. He made the strategic decision not to inquire about Kinsey's plea bargain to avoid the rehabilitative effect the plea agreement might have. Barnes decided to impeach Kinsey on other matters.

■■■ "[S]trategic or tactical decisions on the part of counsel are presumed correct, unless they were completely unreasonable, not merely wrong." *Moore v. Marr*, 254 F.3d 1235, 1239 (10th Cir.2001). Petitioner has not shown that Barnes's objection was "completely unreasonable," and accordingly, it does not rise to the level of deficient performance. This prong of the ineffective assistance claim is lacking.

**2. Prejudice**

Nevertheless, even if counsel rendered ineffective assistance by failing to request accomplice instructions, "the controlling issue is whether the attorney's failure to request the instructions prejudiced the defendant." *Bonin,* 794 F.Supp. at 970. "In assessing prejudice, the reviewing court should consider such factors as whether the accomplice's testimony was corroborat-

ed, whether the trial court gave general credibility instructions, and whether defense counsel questioned the accomplices' credibility during closing argument." *Id.* (citing *United States v. Bosch,* 914 F.2d 1239, 1248 (9th Cir.1990)). In another setting, the court held that the petitioner received ineffective assistance of counsel when his trial attorney did not request an accomplice instruction because the only direct evidence linking petitioner to the crime was the accomplice's testimony. *Freeman v. Class,* 95 F.3d 639, 641–42 (8th Cir.1996).

Trevino was not prejudiced by his counsel's objection to accomplice instructions. If they had been given, the jury would have received evidence of Kinsey's plea agreement, which would have offset the admonition to view his testimony with distrust. (*See* Lodgment No. 11, *Trevino,* No. D017215, slip op. at 15.) Additionally, the jury was already aware of Kinsey's involvement because he admitted being in the car when the shootings occurred. (*Id.* at 16.)

Besides Kinsey's testimony, there was substantial corroborating evidence that pointed to Trevino's guilt. (Lodgment No. 11, *People v. Trevino,* D017215, slip op. at 15–16.) For example, Carlos Mallard testified that Trevino asked Gutierrez "what was up with the nine" prior to the shooting. (Lodgment No. 2(g), Rep.'s Tr. vol. 9, 2529.) A nine-millimeter handgun matching the murder weapon and ammunition were found in Petitioner's bedroom. (Lodgment No. 2(f), Rep.'s Tr. vol. 8, 2316; Lodgment No. 2(i), Rep.'s Tr. vol. 11, 3060, 3062, 3065–66; Lodgment No. 11, *People v. Trevino,* D017215, slip op. at 15.) Angela Knecht testified that when the four men returned to Connelly's apartment, she heard Trevino say that his hand was shaking when the gun went off. (Lodgment No. 2(j), Rep.'s Tr. vol. 12, 3398.)

The corroborating evidence in Trevino's case distinguishes it from *Lankford.* There, the court wrote: "[W]e must ask whether, given proper instructions, there is a 'reasonable probability' that the jury would have found Bryan's testimony [against his brother, Mark] unsupported." *Lankford,* 468 F.3d at 588. The Ninth Circuit found that the corroborating evidence implicated both Lankfords. *Id.* at 589. Accordingly, there was a reasonable probability that with proper instructions on corroboration, "the jury would not have convicted Mark of first degree murder." *Id.* The same cannot be said here. The statements Trevino made to others coupled with the handgun and ammunition found in his bedroom are sufficient corroboration.

Petitioner adds that instructing the jury with CALJIC No. 2.11.5 increased the prejudicial impact of the failure to give accomplice instructions. (Traverse 15.) CALJIC No. 2.11.5 instructs the jury not to discuss or consider why a person that may have been involved in the crime is not a defendant in the trial. (Lodgment No. 1(a), Clerk's Tr. vol. 2, 251.) The trial court gave CALJIC No. 2.11.5 over the objections of all three defense attorneys. (Lodgment No. 2(*l* ), Rep.'s Tr. vol. 14, 3776, May 27, 1992.)

The court of appeal found that the trial court properly gave the instruction because it "was entirely consistent with Barnes's tactical decision to join with the other codefendants' objection to the giving of accomplice instructions and precluding any evidence of Kinsey's plea bargain to be presented to the jury." (Lodgment No. 11, *Trevino,* No. D017215, slip op. at 17–18.) CALJIC No. 2.11.5 is generally not given when the unjoined perpetrator testifies at trial. (*Id.* at 17.) It is excluded because a perpetrator who is testifying usually will be asked about his status,

making the instruction unnecessary. (*Id.*) In this case, however, the defense strategy was not to inform the jury of Kinsey's plea bargain; the instruction was consistent with that strategy. (*Id.*)

Petitioner claims that by giving CALJIC 2.11.5, the trial court stripped the jury of the ability to assess Kinsey's credibility, "apart from his demeanor on the stand and his prior inconsistent statements." (Traverse 15.) The jury, however, was also instructed with CALJIC 2.20, concerning the general credibility of witnesses. (Lodgment No. 1(a), Clerk's Tr. vol. 2, 253.) This instruction informed the jury of several bases that it could use to discredit Kinsey's testimony. This instruction states that in determining witness credibility, the jury may consider, among other things, the existence of an interest or motive to lie and any inconsistent statements made by the witness. (*Id.*) Barnes used his closing statement to highlight inconsistencies in Kinsey's testimony, argue that Kinsey was a "pleaser" whose testimony could not be trusted, and that Kinsey had a "constituency" and had "to please somebody." (Lodgment No. 2(m), Rep.'s Tr. vol. 15, 4048.) There is little to suggest that the jury would have made a different assessment of Kinsey's credibility if the jury was not instructed on CALJIC 2.11.5 and instead allowed to inquire into Kinsey's status as an unjoined perpetrator.

In light of all the evidence presented at trial, Petitioner has failed to show a reasonable probability that giving an accomplice instruction would have brought about a different verdict. Accordingly, the district court should **DENY** Petitioner's third claim for relief.

## V. CONCLUSION

For the reasons stated above, the district court should **DENY** Trevino's First Amended Petition for Writ of Habeas Corpus.

This Report and Recommendation will be submitted to United States District Court Judge Irma E. Gonzalez, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before *March 26, 2007.* The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed on or before *April 6, 2007.* The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir.1991).

March 6, 2007